## CHARLESTON.

GORE v. VINES, ADMR.

Submitted February 6, 1912. Decided October 7, 1913.

1. PARTNERSHIP—*Contract—Accounting.*

Under a contract of partnership for a mercantile business one partner furnished the capital and the other his services as manager and a building for the business, the profits and losses to be shared equally; the capital was invested in goods and the

partner furnishing the same was credited therefor on the books of the firm; each partner was charged on the books with what he took for his own use from the stock; goods were sold, and the stock was replenished by money and profits of the firm:

*Held*, in a suit to settle the partnership affairs after the stock and building were destroyed by fire and the business thereby discontinued, that,

The capital furnished became partnership property and the loss of the goods fell not alone on the partner furnishing the capital, but it was proper to repay him the capital furnished, to the extent of the firm's assets remaining after a payment of the firm's debts, and to charge the other partner with half the loss of capital remaining, though the latter lost his services and building. (p. 786.)

2.    SAME—*Contract—Construction and Effect—Accounting.*

Where a written contract of partnership either from its terms or by the acts and conduct of the parties is made to relate to a partnership business already existing at the time of the execution of the writing, transactions of the firm prior to the date of the contract as well as those subsequent to its date are properly cognizable in a suit for a settlement of the partnership affairs. (p. 788).

3.    SAME—*Accounting—Decree—Sufficiency.*

In a suit for the settlement of a partnership in which a partial loss of the capital furnished wholly by one partner is found but the amount thereof not definitely shown by reason of the uncertainty of the collectability of notes and accounts going to make up the assets applicable to a repayment of the capital furnished, a decree settling principles of the cause whereby the amount is to be ascertained and one-half thereof paid to the partner furnishing the capital by the other partner, on which future decree may follow, is not erroneous on the ground of indefiniteness as to the amount. (p. 789).

Appeal from Circuit Court, Mercer County.

Bill by L. W. Gore against O. P. Vines, administrator, etc. From a decree for defendant, plaintiff appeals.

*Affirmed.*

*Hale & Pendleton,* for appellant.

*Woods & Marlin,* for appellee.

ROBINSON, JUDGE:

On the 15th day of September, 1908, Vines and Gore entered into a written agreement of partnership for the purpose of conducting a general retail mercantile business, whereby it was stipulated that the former was to furnish the sum of $4,000, or goods to the value of that sum, and the latter was to furnish his services as general manager of the business, and also the building in which the business was to be conducted. The contract expressly provided that the parties were to share equally in all profits and losses arising from the business.

For many months prior to the execution of the written contract the parties had actually been conducting the business. The contract was indeed for the continuation of a partnership already existing. The ledger of the firm and the acts and conduct of both of the parties prove this clearly. The old business was not settled and a new one begun. Not even was an inventory made at the time of the execution of the written contract. But the business that had been done prior to the written contract was distinctly carried over into that done after the contract was made. Moreover, the writing itself in one particular evidences that it was to apply to a continuation of the business already existing between the parties. It says that Gore is to furnish the building "in which said mercantile business is now being conducted for the continuation of said business under the firm name aforesaid." And, pretty clearly from the record does it appear that the capital which had gone into the business prior to the date of the written contract had been furnished by Vines, and at that date the firm owed him on this account a sum which was so nearly $4,000 that the parties in drawing up the writing could well estimate it at that amount as the capital to be furnished.

On the 13th day of December, 1908, the store was destroyed by fire. Thereafter the parties did not resume business. Each collected in money due the firm and paid out money on the indebtedness. All outside indebtedness of the partnership has been paid. In March, 1909, Gore brought this suit against Vines for a settlement of the partnership accounts. Vines died soon after the suit was instituted, and the cause was revived in the name of

his administrator, who answered the bill. The court, rightly viewing the pleadings as making a case for reference, referred the cause to a commissioner to ascertain and report the status of the partnership affairs as between the parties. On the incoming of the report plaintiff's exceptions thereto were overruled, the report confirmed, and a decree in accordance therewith entered.

The decree finds that the firm is indebted to the estate of Vines, by reason of capital furnished by him, in the sum of $3,417.90, and adjudges that his administrator recover the same from the firm. It further finds that the total assets of the firm is $2,712.14, and adjudges that such of the same as is in money in the hands of Gore be paid in satisfaction of the costs of the suit and the balance as far as collectable to the administrator of Vines on the debt decreed to his estate. The decree then provides that uncollected notes and accounts going to make up the assets of $2,712.14 shall be collected and applied to the further payment of the debt decreed Vines' estate. As to this part of the assets the commissioner had reported that he had not ascertained how much was good and collectable. The decree in the end directs, that of whatever remains unpaid after the application of all the assets collected and collectable, one-half shall be paid by Gore to the estate of Vines, thus putting the loss of the partnership equally on the partners.

From the decree plaintiff, Gore, has appealed. First, he insists that the firm should not have been charged with the capital which Vines put into the business. He contends that the loss of the stock of goods by fire must fall on Vines alone—that since Vines contributed the capital, the loss of the goods was his and not that of the firm. The record will not support this contention. Vines it is true contributed the capital for the goods, but the goods were purchased and dealt with as firm property. The written contract did not specifically provide that Vines should contribute simply the use of the goods to the firm. It meant that he should contribute to the firm the goods themselves. Naturally they would become partnership property, especially so since by the contract the partners were to share equally losses as well as profits. For if the goods were the absolute property of Vines, then when any of them were sold to a customer the money received for them, or the note or account

made, would be the property of Vines and not that of the firm, except as to the mere profit represented therein. In this view, there could be no loss to Gore, as far as capital was concerned, for any bad debt made by him as manager. Yet the contract plainly meant that there might be. On the other hand the contract provided that plaintiff should contribute his services and the building, meaning in the very nature of things merely the use of the same, not absolute property therein. The parties themselves understood the contract as we interpret it. The goods were sold and replenished as partnership property. Profits from the business belonging equally to the partners were put into the stock. Why did plaintiff allow his share of the profits indiscriminately to go into a replenishing of the stock if Vines owned the stock? Each partner was charged on the books of the firm with what he took therefrom for the personal use of himself and family. The ledger of the firm shows that Vines was given credit for each item of capital furnished by him. Plaintiff was in charge of that book. It was made under his guidance at least. He is responsible for its makeup. Why did he allow credit therein to Vines for money advanced for goods if the goods were not considered partnership property? Plaintiff seems to think that because he loses his services and the building Vines should lose the capital. Yet, though the books were under control of plaintiff, he made no charge thereon in his favor for either salary or rent. He construed the contract, while the business was continuing, just as the law interprets it. It is true that plaintiff introduced witnesses who testified that they heard Vines say while the business was going on that the goods were his. But the testimony along this line is so meager and uncertain that it can not properly prevail as against the legal import of the writing, and the acts and conduct of the parties themselves. The stock of goods was plainly partnership property. Any creditor of the firm could have subjected it to his debt. *Snyder* v. *Lunsford,* 9 W. Va. 223. We are by no means disposed to disturb the finding of the commissioner and the decree thereon in this behalf.

The written contract contains no terms or restrictions as to the ownership of the capital stock inconsistent with the construction which we aprove. It simply says that Vines is to

furnish the sum of $4.000, or goods to the value of that sum, for the purpose of conducting the business. It does not stipulate that he is individually to retain the ownership of the capital furnished by him. The legal significance of the terms of the contract in this behalf is that Vines' contribution to the capital ceases to be his individually and becomes partnership property. "The capital, in whatever shape contributed, becomes at once the property of the firm and is no longer individual property. The phrase capital, or capital stock, conclusively excludes the idea of continued individual proprietorship." 1 Bates on Partnership, section 256.

Though plaintiff lost his services and his building, still he rightly owes to the estate of his former partner one-half of the loss on the capital contributed by the latter. "If there are no profits and the capital has been impaired or wholly lost, in dividing losses the deficit must be repaid like any other loss, for impairment of capital is a loss the same as any other, and is not to be reimbursed out of profits merely: That the capital has been contributed unequally and losses are to be equal makes no difference, or if the capital has been wholly paid by one partner, the other contributing services and skill, the latter who has lost his time owes to the former the same proportion of a loss of capital that he would be chargeable with had the losses not reached the capital, but had simply diminished the profits." 2 Bates on Partnership, sec. 813.

Another contention of plaintiff is that a settlement of the partnership account should not embrace the business done prior to the date of the written contract. But, as we have seen, the contract was made in relation to a business already existing. Clearly Vines had already furnished what the contract called on him to furnish as capital. All that he put in as capital was contributed long before the writing was made. Though to an extent indicating relation to future action, the writing in fact covered that already done, as well as that to be done. The settlement that has been made and upon which the decree is based properly embraces the whole of the transactions between the parties as partners. Plaintiff himself has recognized the business done before the date of the writing as belonging to the same partnership as that existing after the writing. In his

collecting of accounts due the firm and his paying of debts due from it, he has handled all such business as belonging to one continuous partnership between him and Vines, without regard to the date of the written contract. In settling the business he has not undertaken to settle a partnership only beginning on the date of the writing. Then why should the court below have done so?

Plaintiff further submits that the decree is so vague and indefinite that it should be reversed. He complains that it charges him with one-half the loss on the capital furnished by Vines before the value of the assets necessary to a computing of the amount of the loss has been definitely ascertained. The decree is that plaintiff shall pay one-half of that loss, the amount of which is contingent on the collectability of certain notes and accounts among the assets of the firm. True, the decree adjudges no specific amount to be paid on the score of loss by plaintiff to the estate of Vines. It does no more than to settle principles of the cause whereby plaintiff must pay to Vines' estate one-half of the loss on the capital. In this it is not indefinite and erroneous. When the amount is definitely ascertained and reported to the court, a further decree adjudging the amount against plaintiff may follow.

There is no error disclosed by the record, and the decree will be affirmed.

*Affirmed.*