## Newton v. Sackett

*D. H. Kubert,* for plaintiff.

*J. Singer,* for defendant.

BOK, P. J., January 16, 1957.—Newton sued Sackett, his partner, in equity, demanding an accounting and contribution for capital losses. Sackett's responsive answer denied his liability for these losses and also alleged a prior settlement of the dispute.

A hearing was held and an accounting filed in 1955. Requests were completed by December 20, 1956.

### Findings of Fact

1. Albert G. Newton and Barnard L. Sackett entered into a written agreement of partnership on October 14, 1953. The parties planned to promote theatrical enterprises.

2. The agreement of October 14, 1953, provided that Newton would contribute the sum of $2,000 to the venture. Sackett agreed to provide his experience and services. It further was agreed that at the completion of each production Newton's investment would be returned and the parties would divide the profits equally.

3. It was agreed that Sackett would receive no salary for his services.

4. The agreement did not provide how the loss of Newton's money would be distributed.

5. Newton contributed a total of $5,900 to the venture. He was repaid $2,069.90. Sackett actively managed the enterprise. He received no money for this work.

6. As a result of two productions, the partnership lost $4,799.83. Of this sum, $969.80 represents currently unpaid obligations of the partnership.

7. All obligations reflected in the accounting filed in this suit properly were incurred by Sackett acting on behalf of the partnership.

8. Prior to this suit, Newton offered to release all claims against Sackett for $100 if Sackett would furnish a complete and satisfactory accounting.

9. Prior to this suit, Sackett had never accounted to Newton for the Tandy-Cronyn production of December 3, 1954. Sackett sent Newton checks totaling $100 which Newton never cashed. Newton has offered to return these checks.

### Discussion

Section 18 of the Uniform Partnership Act provides that unless the partners otherwise agree:

"Each . . . must contribute towards the losses, whether of capital or otherwise, sustained by the partnership, according to his share in the profits": Uniform Partnership Act of March 26, 1915, P. L. 18, sec. 18(a), 59 PS §51(a).

Newton claims that this provision sustains his claim for one-half the amount of his loss because the partnership agreement contains no provision to the contrary.

However, at common law it was held that where one partner contributes his services to the association and the other provides the use of his money or property, rather than the money or property itself, the first

partner is not obligated to share the losses of the second absent a contrary agreement: Heran v. Hall, 1 B. Mon. 159 (Ky. 1840). Accord Gore v. Vine, 72 W. Va. 783, 79 S. E. 820 (1913). See Bivins v. Proctor, 125 Tex. 137, 145, 80 S. W. 2d 307, 311 (1935); Whitcomb v. Converse, 119 Mass. 38, 43 (1875). Under these cases, such a loss is not a "partnership" loss. Therefore, since subsection 18(a) only is applicable to "partnership" losses, its language indicates that this rule is continued under the statute. While the logic of these cases is not compelling, I think they should be followed because their result is sound. The rule is applicable to hybrid business associations whose members may share profits and describe themselves as partners without actually intending to be visited with all of the obligations inter se which are incident to partnership status.

The partnership agreement in this case suggests that Newton merely contributed the use of his money to the venture. Paragraph 6 indicates that the partnership itself has no separate capital; at the completion of each production Newton's investment was to be returned and the profits divided. Nothing suggests that the parties were obligated to invest any part of their profits in a reserve fund. Furthermore, the nature of the enterprise demonstrates that there was no need for a permanent capital fund. The association had no physical assets to maintain, and its operations were to be discontinuous. Therefore, although the agreement is couched in the language of formal partnership, in fact, Newton merely was to supply an impecunious promoter with the use of funds in return for a share of his profits. It was more an investment venture than a partnership.

The only evidence to the contrary is testimony that some of Newton's money initially was deposited in a joint checking account. However, the signature card

was not produced, and for all that appears, Sackett only had a right to draw on the account and was not its joint owner: Cf. Flanagan v. Nash, 185 Pa. 41 (1898). This inference is strengthened by testimony that immediately after the Anna Russell production Newton withdrew most of the funds then deposited in the account.

Newton also claims that $3,900 of his investment was loaned to the partnership, not contributed as capital. The only evidence to support him is paragraph 1 of the contract in which he only promises to contribute $2,000 to the enterprise. However, the other evidence amply suggests that this provision subsequently was discarded when Newton's initial investment proved insufficient to carry on the venture. Accordingly, therefore, I accept Sackett's testimony that the additional $3,900 was invested on the same terms as the original $2,000.

Therefore, because Newton admits the propriety of Sackett's expenditures on behalf of the association and because subsection 18 (a) of the Uniform Partnership Act is inapplicable to this case, Newton is entitled to recover nothing from Sackett.

### Conclusions of Law

1. This court has jurisdiction over the parties and the subject matter of this suit.

2. Newton's offer of settlement lapsed when Sackett failed to supply a complete and satisfactory accounting within a reasonable time.

3. Newton is entitled to recover nothing from Sackett.

### Decree Nisi

And now, to wit, this January 16, 1957, it is ordered, adjudged and decreed as follows:

1. That the complaint be dismissed.

2. That each party pay his costs.