[Civ. No. 3427.   Second Appellate District, Division One.—November 30, 1920.]

## J. M. KENT, Respondent, v. J. M. DANZIGER et al., Appellants.

[1] CONTRACT—ASSOCIATION FOR DEVELOPMENT OF OIL LANDS—CONTRIBUTION—CONSTRUCTION OF INSTRUMENT.—Where a contract between three individuals provided that two of them were to advance and pay all moneys required in the location and development of certain prospective oil lands, and the other party was to contribute no money, but devote his time and services, the latter was not liable to one of the former for contribution on payment of a judgment obtained against all of them, notwithstanding the services for which such judgment was obtained were rendered after the party who paid the judgment had given notice to the party who was not required to contribute any money that no further advancements would be made by him and that he had been informed by the other contributing party under the contract that he would take care of all future matters.

APPEAL from a judgment of the Superior Court of Kern County. Milton T. Farmer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Goodwin & Morgrage for Appellants.

Anderson & Borton for Respondent.

SHAW, J.—In substance, the facts out of which this controversy arose are as follows: In the year 1910, plaintiff,

defendant Danziger, and E. A. Wiltsee associated themselves under the fictitious name of Lost Hills Syndicate in a joint venture for the purpose of locating and developing certain prospective oil lands in what is known as the Lost Hills district in Kern County, California. It was agreed between the parties that Danziger and Wiltsee were to advance and pay all moneys required in the operations to be conducted. Kent was to contribute no money, but in consideration of devoting his time and service to the business, he was to receive a share of any profits derived from the venture. The association employed W. H. Callahan as superintendent, who brought an action against the Lost Hills Syndicate, J. M. Danziger, E. A. Wiltsee, and J. M. Kent, as copartners doing business under such fictitious name, to recover for services rendered, and obtain a judgment against all of them. This judgment on appeal was affirmed, and thereafter Danziger, in consideration of the full amount thereof by him paid to Callahan, caused it to be assigned to George W. Price. An execution was issued thereon and, as a means of enforcing contribution, a levy was made upon plaintiff's property. Thereupon plaintiff brought this action to have the execution recalled and all proceedings had and taken thereunder vacated and set aside and the sheriff enjoined from taking any action under or pursuant to the execution against his property.

Judgment was rendered for plaintiff, from which defendant Danziger has appealed.

In the trial of the Callahan case it was made to appear that Callahan commenced work in October, 1910, and continued work until December, 1911, at an agreed compensation of five dollars per day. It further appears from the judgment-roll in that case, which was received in evidence in the instant case, that Kent testified to the effect that about July 6, 1911, he received a letter from Danziger wherein Danziger stated to him that he was not going to put up any more money in the venture; that he was away ahead of Wiltsee in putting up money; and that Wiltsee had stated to him that he would take care of all matters from that time on. That pursuant to this notice Kent testified that he notified Callahan that Danziger was not going to put up any more money and would not be responsible for any more bills contracted and that he (Kent) was out when

Danziger quit and would have nothing more to do with it. Other testimony to the same effect and tending to show that both Danziger and Kent severed their connection with the operations and so notified Callahan was introduced at the trial of the Callahan case. Notwithstanding such testimony so given by Kent, the court, upon sufficient evidence, decided adversely to the contention and gave judgment in favor of Callahan. Upon the trial of the instant case Kent gave like testimony to that by him given in the Callahan case, notwithstanding which fact the trial court in effect held that Kent was not liable to Danziger for any part of the judgment obtained in the Callahan case. Under this statement of facts the position of appellant is, as we understand it, that conceding the agreement made between Danziger, Wiltsee, and Kent was that the latter should contribute no money therein, nevertheless the Lost Hills Syndicate was dissolved on July 6th, at which time Kent communicated to Callahan the fact that Danziger stated he would contribute nothing more to the expense of continuing operations, and there- fore for any expense incurred subsequent to said date Kent was liable for his share thereof. It may well be questioned whether or not Danziger's letter constituted a dissolution of the syndicate. The purport thereof is that he had, in the prosecution of the work, contributed more than his share; that he would not contribute more, and that Wiltsee was to take care of all matters from then on. Apparently he contemplated a continuance of work, the expense thereof to be born by Wiltsee. However this may be, at the trial of the Callahan case the court determined that the syndicate continued to exist during all the time that Callahan was engaged in doing the work for which he had judgment. This being true, it follows, we think, that there was no change, readjustment, or modification of the contract between Kent and his two associates with respect to his liability as a member of the syndicate and under which it was agreed that as between them Kent should not be required to contribute any money in doing the work. While Danziger concedes that Kent is not liable to contribution for Callahan's services prior to July 6th, he insists that he should contribute to the payment of that part of the judgment covered by services performed by Callahan from July 6, 1911, to some time in December following; the sole

ground therefor being the alleged dissolution of the syndicate and notice to Callahan that he would not be responsible for further payments to him.

[1] The fact that it was not dissolved, but continued up to the time when Callahan terminated his employment, was determined in the Callahan case, and this being true, it must follow that, notwithstanding the fact that as to Callahan plaintiff Kent might be liable as a copartner in the venture, nevertheless his liabilty to Danziger and Wiltsee for any part of the compensation due Callahan for services rendered was controlled by the agreement, and since this provided that, as between themselves, Kent should not be liable for debts incurred or moneys expended in prosecuting the work, it necessarily follows that upon Danziger paying the judgment obtained by Callahan no right to contribution exists as against Kent.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.