[Civ. No. 13846. Second Dist., Div. One. Apr. 9, 1943.]

E. L. PARKER, Respondent, v. EDGAR C. TREFRY et al.,
Appellants.

E. V. Knauf for Appellants.

Donald Paul Covert for Respondent.

YORK, P. J.—The instant action arose out of the construction and sale of two houses in Glendale, California, under a written contract covering the first house and which was used as a basis for the second house, providing as follows:

"This agreement, made this 14th day of March, 1938, by and between Edgar C. Trefry . . . the party of the first part, and E. L. Parker . . . the party of the second part:

"Witnesseth: That the party of the first part is the owner in joint tenancy with Helen F. Trefry, his wife, of that certain piece or parcel of ground described as Lot 1, Tract 11057, of Rossmoyne, in the city of Glendale . . . That he hereby agrees to furnish said lot for the construction thereon by E. L. Parker . . . that certain residence the plans and specifications for which have been prepared . . . and approved by both parties to this agreement. And party of the first part hereby agrees to pay the cost of said construction on the basis of general contractors' cost of labor and material;

"Witnesseth Further: That E. L. Parker, party of the second part, a building contractor, agrees to furnish the labor and material for the construction and completion of said residence in a good workmanlike manner at the net cost of same, according to the plans mutually agreed upon; that said E. L. Parker may receive payment for same in the manner provided in the loan escrow . . . as the work progresses. Costs of the work in excess of said loan funds shall be provided by the party of the first part upon completion of same.

"Further, both parties to this agreement, their heirs or assigns, agree that upon completion of said residence the property shall be placed upon the market for sale, and when sold, the proceeds thereof, over and above construction costs, net cost of said lot, financing charges, interest on loans, sales commission and 5% building fee for administration and superintendency to party of the second part, shall be equally divided between them. It is further agreed herein that no arbitrary sales price shall be fixed by either party that would tend to prohibit sale at a fair and reasonable profit, but both parties agree to maintain the sale price agreed upon without change except by mutual consent.

"It is further mutually understood and agreed that both parties to this agreement shall have equal access at all times to all records, contracts, plans and figures pertaining to matters covered by this agreement and specifically referred to."

After completion the houses were on the market for about a year and a half before sale and, instead of realizing a profit therefrom, losses were sustained thereon. Respondent instituted the instant action, as stated in his brief, to recover:

"a. The difference between the 'net cost' of labor and materials furnished by him and the total amount he had received from 'building loans' and from appellants;

"b. Five per cent of the cost of the two houses as a 'building fee for administration and superintendency' of the construction; and

"c. One-half of the difference between the total costs of the houses and the prices at which the parties had agreed the houses should be sold."

Appellant Edgar C. Trefry filed a second amended cross-complaint alleging the existence of a partnership relation between him and cross-defendant Parker; that said cross-complainant had expended his own funds on behalf of the joint venture because the cross-defendant had wrongfully increased the cost of the buildings in order to increase the 5 per cent building fee referred to in the written agreement; and prayed for actual damages in the sum of $5,000 and $1,000 punitive damages.

It was found by the court that "plaintiff is entitled to judgment against the defendants, and each of them, for the balance of the costs of construction not paid to him from the loan funds and by the defendants, which balance amounts to the sum of $147.08 on the first house and $580.59 on the second house . . . ." Accordingly, judgment was entered in favor of plaintiff Parker for the sum of $727.67, with the proviso that he pay unpaid bills amounting to $431.34 out of the sums collected by him upon said judgment; it being further adjudged that cross-complainant Trefry take nothing by reason of his cross-complaint.

This appeal is prosecuted from said judgment, appellants contending, as they did at the trial, that the parties to the transaction were joint adventurers and that respondent should pay one-half of the loss suffered by appellants; that the items of cost and the money received were stipulated, leaving as the real issue the question of the relationship of the parties.

Respondent agrees that a determination as to the existence of a joint venture controls this case, but submits that unless he must share the losses as a joint adventurer, he is entitled to the sum of $727.67, being the balance of the "net costs" of construction, for which judgment was rendered in his favor.

On the issue of joint venture the court found: "XVIII. That no partnership or joint adventure existed between plaintiff and the defendants, or either of them; that there was no agreement, either oral or in writing, or understanding that losses which might be incurred upon the sale of said houses, and each of them, were to be shared, or any part thereof paid by Parker."

The court also found that the total cost of the first house was the sum of $10,160.12 and of the second house the sum of $9,144.72; that upon completion of the first house a sales price of $16,500 was agreed upon; and upon completion of the second house a sales price of $14,500 was agreed upon therefor, and that no sales price less than said respective sums was ever agreed upon between the parties.

Apparently the first house was sold for $10,500 and the second house for $9,400.

It is shown by the record herein that the lots upon which the houses were built were purchased specifically for the purpose of building houses thereon and selling them, the profit derived therefrom to be divided, as stated in the written agreement. Title to the lots apparently was taken in the names of appellants who executed the necessary documents to procure the loan to finance the construction of the buildings. There was no cash payment made upon the lots, it being understood that they were to be paid for out of the sale price for the completed houses. Costs of building in excess of the loan were to be provided by appellants and when the buildings were completed, all profits derived from the sale were to be equally divided between the parties after deducting "construction costs, net cost of said lot (s), financing charges, interest on loans, sales commission and 5 per cent building fee for administration and superintendency to party of the second part (respondent)."

It is also clear from the evidence adduced at the trial herein that there were no typewritten or printed specifications but that the blue prints and city ordinances, as well as mutual discussion as the work progressed, were to function in place of typewritten plans and specifications.

Appellants cite the consolidated cases of *Irer* v. *Gawn*, 99 Cal.App. 17 [277 P. 1053], as being directly in point. In these cases the owner of certain lots and another agreed that this other should furnish money to erect a bungalow, and that each should receive pay for personal services in the con-

struction of the building, and that they should share the profits. It was there held (p.23) : "In both the original and amended conclusions of law the court did correctly find 'That the said agreement . . . constituted a joint adventure.' The single transaction of becoming joint owners of real property upon which a bungalow court is constructed for sale from the joint contributions of the interested parties, under the circumstances disclosed by the record in these cases, clearly indicates that the parties intended to create a joint adventure. The nature of this transaction, as a joint adventure, is not changed by the fact that the agreement incidentally provided that the respective parties were to render personal services in the construction of the buildings and when so employed they were to receive $10 per day, which allowance was to be charged 'as items of expense in the construction.' . . . The rule prescribed by the statutes of California with respect to partnership profits and losses announces only the common-law doctrine which is applicable to the circumstances of the present cases. Section 2403 of the Civil Code provides : 'In the absence of any agreement on the subject the shares of partners in the profit or loss of the business are equal, and the share of each in the partnership property is the value of his original contribution, increased or diminished by his share of profit or loss.' This means that in the event of the termination of a contract of joint adventure, the respective parties are to be reimbursed to the extent of the value of their original contribution less their proportion of the loss sustained."

Both parties rely upon the case of *Spier* v. *Lang,* 4 Cal. 2d 711 [53 P.2d 138], in which the plaintiffs sued to recover for materials furnished to defendants for the purpose of drilling for oil on a leasehold owned by the defendant Lang, on the theory that they were partners of Lang or joint adventurers. Whether such a partnership relation existed was the only issue on the trial.

The court there stated (p.716) : "The main reliance of the plaintiffs is on the provision of the contract that the defendants were to share in a division of the profits. But this feature of the agreement has long been held not to require a conclusion that a partnership relation existed where also there was no joint participation in the management and control of the business, and the proposed profit-sharing was con-

templated only as compensation or interest for the use of the money advanced. [Citation of authorities.] The foregoing conclusion and cited cases are in conformity with the definition of the partnership relation contained in the Civil Code (sec. 2400, Stats. 1929, p. 1898, formerly contained in sec. 2395), which includes as an essential element the joint participation in the conduct of the business. The presence of the same element is necessary to constitute the parties joint adventurers. [Citation of authorities.] The plaintiffs urge that subdivision (4) of section 2401 of the Civil Code providing that the receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner, has some controlling weight in this case. It has no bearing, however, in the absence of any evidence that profits were received, and there is no evidence of the payment of any to the defendants.''

''The courts have not laid down an exact definition of the term 'joint adventure'; nor is it possible to enunciate a general rule by means of which the question as to what amounts to a joint adventure may be answered, inasmuch as the answer depends largely upon the terms of the particular agreement, upon the construction which the parties have given it, as indicated by the manner in which they have acted under it, and upon the nature of the undertaking, as well as upon other facts. . . . It may be stated in general terms that the relation of joint adventurers is created when two or more persons combine their money, property or time in the conduct of some particular line of trade, or for some particular business deal, agreeing to share jointly, or in proportion to the capital contributed, in the profits and losses, assuming that the circumstances do not establish a technical partnership. . . . As between the parties themselves, the relationship of joint adventurers is a matter of intent and arises only when they intend to associate themselves as such. . . . To constitute a joint adventure, the parties must combine their property, money, efforts, skill, or knowledge in some common undertaking. The contributions of the respective parties need not be equal or of the same character, but there must be some contribution by each coadventurer of something promotive of the enterprise. Although it has been contended that the property with which the parties to a joint adventure are to operate must be acquired after the relationship has come into existence, it seems clear that it is immaterial whether the property involved was individually

owned before the joint venture was entered upon or was afterward acquired, so long as it was contributed and devoted to the uses and purposes of the enterprise. . . . A joint proprietary interest and right of mutual control over the subject matter of the enterprise or over the property engaged therein is essential to a joint adventure. . . .

". . . an agreement between the owner of lots and a building contractor for the construction of houses on the lots, and a division of the profits from the sale of the houses, gives rise to the relationship of joint adventurers, rather than that of master and servant or of independent contractor, where it discloses an intent that both parties shall· contribute to the enterprise, exercise control over it, and be accountable to each other for their acts in carrying it out. (*Keiswetter* v. *Rubenstein*, 235 Mich. 36, 209 N.W. 154, 48 A.L.R. 1049.)" 30 Am.Jur. 680, sec. 7; 681, sec. 8; 682 sec. 11; 685 sec. 16.

On the question of losses suffered by parties to a joint venture, 30 Am.Jur. 694, sec. 33, enunciates the following rule: "Although there is authority to the effect that an agreement to share losses is not in all cases an essential element of a joint adventure, such an agreement express or implied is usually involved in the enterprise. In several instances, however, it has been held that where the contribution of a party to the adventure consists merely of services which are performed, he is not liable to his associates on account of financial losses sustained in the venture. . . . Where the joint enterprise is the purchase and sale of property, the view has been taken that a party thereto cannot be charged with a loss until it is established by a sale."

■ The omission of a provision for the sharing of losses in a joint adventure is immaterial because the law supplies that provision. In the absence of agreement, losses by the parties are shared in the same proportion as profits are· to be divided. (See section 2412, subd.(a), Civil Code: "The rights and duties of the partners in relation to the partnership shall be determined, subject to· any agreement between them, by the following rules: (a) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities including those to partners are satisfied; and must contribute towards the losses, whether of

capital or otherwise, sustained by the partnership according to his share in the profits.'')

"In the absence of evidence of an agreement to the contrary, the members of a joint adventure will participate equally in the profits and losses of the enterprise. [Citation of authorities.]" (*Arnold* v. *Humphreys*, 138 Cal.App. 637, 643 [33 P.2d 67]. See, also, *Irer* v. *Gawn, supra.*)

 An analysis of the terms of the agreement of March 14, 1938, coupled with the acts of the parties thereunder, as established by their own testimony, reveal an intent to enter into a joint enterprise, and the fact that it resulted in a loss rather than in a profit is not sufficient to change the character of the transaction from that of a joint adventure to one of employer and employee or of independent contractor.

For the foregoing reasons, the judgment is reversed and the cause remanded with directions to the court below to determine the losses sustained by the said venture, and to enter a judgment thereon in conformity with the views herein expressed.

Doran, J., and White, J., concurred.