[S. F. No. 19760. In Bank. Sept. 20, 1957.]

STEPHEN M. KOVACIK, Respondent, v. HENRY E. REED, Appellant.

*Assigned by Chairman of Judicial Council.

John W. Broad and John A. Busterud for Appellant.

Ralph Leon Isaacs and Albert J. McGuire for Respondent.

SCHAUER, J.—In this suit for dissolution of a joint venture and for an accounting, defendant appeals from a judgment that plaintiff recover from defendant one half the losses of the venture. We have concluded that inasmuch as the parties agreed that plaintiff was to supply the money and defendant the labor to carry on the venture, defendant is correct in his contention that the trial court erred in holding him liable for one half the monetary losses, and that the judgment should therefore be reversed.

The appeal is taken upon a settled statement under the provisions of subdivisions (b), (c), and (d) of rule 7, Rules on Appeal. From the "condensed statement of the oral proceedings" included in the settled statement, it appears that plaintiff, a licensed building contractor in San Francisco, operated his contracting business as a sole proprietorship under the fictitious name of "Asbestos Siding Company." Defendant had for a number of years worked for various building contractors in that city as a job superintendent and estimator.

Early in November, 1952, "Kovacik [plaintiff] told Reed [defendant] that Kovacik had an opportunity to do kitchen

remodeling work for Sears Roebuck Company in San Francisco and asked Reed to become his job superintendent and estimator in this venture. Kovacik said that he had about $10,000.00 to invest in the venture and that, if Reed would superintend and estimate the jobs, Kovacik would share the profits with Reed on a 50-50 basis. Kovacik did not ask Reed to agree to share any loss that might result and Reed did not offer to share any such loss. The subject of a possible loss was not discussed in the inception of this venture. Reed accepted Kovacik's proposal and commenced work for the venture shortly after November 1, 1952. . . . Reed's only contribution was his own labor. Kovacik provided all of the venture's financing through the credit of Asbestos Siding Company, although at times Reed purchased materials for the jobs in his own name or on his account for which he was reimbursed. . . .

"The venture bid on and was awarded a number of . . . remodeling jobs . . . in San Francisco. Reed worked on all of the jobs as job superintendent. . . . During . . . August, 1953, Kovacik, who at that time had all of the financial records of the venture in his possession, . . . informed Reed that the venture had been unprofitable and demanded contribution from Reed as to amounts which Kovacik claimed to have advanced in excess of the income received from the venture. Reed at no time promised, represented or agreed that he was liable for any of the venture's losses, and he consistently and without exception refused to contribute to or pay any of the loss resulting from the venture. . . . The venture was terminated on August 31, 1953."

Kovacik thereafter instituted this proceeding, seeking an accounting of the affairs of the venture and to recover from Reed one half of the losses. Despite the evidence above set forth from the statement of the oral proceedings, showing that at no time had defendant agreed to be liable for any of the losses, the trial court "found"—more accurately, we think, concluded as a matter of law—that "plaintiff and defendant were to share equally all their joint venture profits and losses between them," and that defendant "agreed to share equally in the profits and losses of said joint venture." Following an accounting taken by a referee appointed by the court, judgment was rendered awarding plaintiff recovery against defendant of some $4,340, as one half the monetary losses[1]

---

[1] The record is silent as to the factors taken into account by the referee in determining the "loss" suffered by the venture. However, there is

found by the referee to have been sustained by the joint venture.

 It is the general rule that in the absence of an agreement to the contrary the law presumes that partners and joint adventurers intended to participate equally in the profits and losses of the common enterprise, irrespective of any inequality in the amounts each contributed to the capital employed in the venture, with the losses being shared by them in the same proportions as they share the profits. (See Corp. Code, § 15018; *Monson* v. *Rahlmann* (1936), 7 Cal.2d 506, 509 [2] [61 P.2d 456]; *Universal Sales Corp.* v. *California etc. Mfg. Co.* (1942), 20 Cal.2d 751, 764 [6] [128 P.2d 665]; *Campagna* v. *Market St. Ry. Co.* (1944), 24 Cal.2d 304, 308-309 [8] [149 P.2d 281]; *Crowley* v. *Thomson* (1953), 41 Cal. 2d 636 [262 P.2d 1]; *Irer* v. *Gawn* (1929), 99 Cal.App. 17, 24-25 [7] [277 P. 1053]; *Parker* v. *Trefry* (1943), 58 Cal. App.2d 69, 70, 75-76 [2] [136 P.2d 55]; *Martter* v. *Byers* (1946), 75 Cal.App.2d 375, 384 [171 P.2d 101]; *Rice* v. *Watkins* (1948), 85 Cal.App.2d 44, 51 [6] [191 P.2d 810]; *Kirkpatrick* v. *Smith* (1952), 113 Cal.App.2d 409, 411 [2] [248 P.2d 534]; 28 Cal.Jur.2d 497; 48 C.J.S. 839, n. 81.)

However, it appears that in the cases in which the above stated general rule has been applied, each of the parties had contributed capital consisting of either money or land or other tangible property, or else was to receive compensation for services rendered to the common undertaking which was to be paid before computation of the profits or losses. Where, however, as in the present case, one partner or joint adventurer contributes the money capital as against the other's skill and labor, all the cases cited, and which our research has discovered, hold that neither party is liable to the other for contribution for any loss sustained. Thus, upon loss of the money the party who contributed it is not entitled to recover any part of it from the party who contributed only services. (See L.R.A. 1917E, 877-880, notes 18, 20; 48 C.J.S.

---

no contention that defendant's services were ascribed any value whatsoever. It may also be noted that the trial court "found" that "neither plaintiff nor defendant was to receive compensation for their services rendered to said joint venture, but plaintiff and defendant were to share equally all their joint venture profits and losses between them." Neither party suggests that plaintiff actually rendered services to the venture in the same sense that defendant did. And, as is clear from the settled statement, plaintiff's proposition to defendant was that plaintiff would provide the money as against defendant's contribution of services as estimator and superintendent.

839, n. 82; 28 Cal.Jur.2d 495-498; 30 Am.Jur. 694, § 33; *Dugan* v. *Pettijohn* (1955), 134 Cal.App.2d 133, 136-137 [2] [285 P.2d 339]; *Heran* v. *Hall* (1840), 40 Ky. (1 B. Mon.) 159 [35 Am.Dec. 178]; *Meadows* v. *Mocquot* (1901), 110 Ky. 220 [61 S.W. 28]; *Bowling* v. *Duvall* (1937) 270 Ky. 494 [109 S.W.2d 1200, 1201]; see also *Tiffany* v. *Short* (1943), 22 Cal.2d 531 [139 P.2d 939]; *Kent* v. *Danziger* (1920), 50 Cal.App. 225 [194 P. 724].) ▆ The rationale of this rule, as expressed in *Heran* v. *Hall* and *Meadows* v. *Mocquot,* both *supra,* is that where one party contributes money and the other contributes services, then in the event of a loss each would lose his own capital—the one his money and the other his labor. Another view would be that in such a situation the parties have, by their agreement to share equally in profits, agreed that the values of their contributions—the money on the one hand and the labor on the other—were likewise equal; it would follow that upon the loss, as here, of both money and labor, the parties have shared equally in the losses. Actually, of course, plaintiff here lost only some $8,680—or somewhat less than the $10,000 which he originally proposed and agreed to invest.

▆ Plaintiff contended on oral argument before this court that it must be assumed that there was evidence outside the record which would support the trial court's "finding" (conclusion) of an agreement between the parties to share monetary losses as well as profits. But, as already noted, this appeal is taken upon a settled statement (rule 7 (b) (c) (d), Rules on Appeal). Rule 52, Rules on Appeal, provides that "If a record on appeal does not contain all of the papers, records and oral proceedings, . . . it shall be presumed . . . that it includes all matters material to a determination of the points on appeal . . ." Thus, the evidence to support the essential findings and conclusions here must be found in the settled statement or the judgment must fall. (*Atha* v. *Bockius* (1952), 39 Cal.2d 635, 646 [248 P.2d 745]; *Estate of Pierce* (1948), 32 Cal.2d 265, 274 [17] [196 P.2d 1].) Plaintiff's contention is therefore without merit.

It follows that the conclusion of law upon which the judgment in favor of plaintiff for recovery from defendant of one half the monetary losses depends is untenable, and that the judgment should be reversed. Consequently, it is unnecessary to dispose of defendant's further contention that plaintiff could not in any event recover, because the joint

venture did not hold or apply for a general contractor's license or any other license, and was thus tainted with illegality.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.

Respondent's petition for a rehearing was denied October 16, 1957.