[Civ. No. 26515.   Second Dist., Div. Four.   Oct. 23, 1963.]

LEENDERT DE WITTE, Plaintiff and Appellant, v. O. H. CALHOUN et al., Defendants and Respondents.

Ervin, Cohen & Jessup, John W. Ervin, W. Edgar Jessup, Jr., and Horace N. Freedman for Plaintiff and Appellant.

Johnson, Bannon, Black & Wohlwend, Johnson & Ladenberger and Robert D. Bannon for Defendants and Respondents.

KINGSLEY, J.—Plaintiff, who holds a degree of Doctor of Philosophy in Geophysics, is an expert in the art and science of reading and evaluating electric logs of oil and gas wells. After a period in which plaintiff had performed services for defendants as a consultant, in March 1955, plaintiff and defendant Calhoun[1] entered into an oral agreement whereby plaintiff was retained by defendant on a part-time basis as an independent consultant. His duties included the exploration for oil and gas prospects by means of the systematic evaluation of electric logs and, upon the development of such prospects, to report them to defendant. Defendant agreed to pay plaintiff a retainer of $500 per month and in addition 10 per cent of the net profits received by defendants and derived from lands within prospects so developed by plaintiff. While plaintiff was free to do consultant work for other clients it was agreed that his exploration work through electric log evaluation was to be done exclusively for defendant.

Plaintiff thereafter brought to the attention of Calhoun a "prospect" in Grand County, Colorado (referred to in the record as the "Granby Anticline area") and a prospect or prospects in Northeastern Utah. The exact extent of this later prospect is one of the issues in the case. Calhoun proceeded to acquire land in a portion of the Utah area referred to in the record as the Uintah Basin (or, alternatively, as the Wasatch formation) and to arrange for leases and for drilling operations. As activities in the Utah area continued, plaintiff asked Calhoun to reduce their agreement to writing. Calhoun temporized for some time, pleading the press of other business. Finally, on February 22, 1956, plaintiff repeated his demand, buttressing it with a refusal to deliver to Calhoun a report prepared by plaintiff and which he knew Calhoun urgently needed in order to carry forward the plans for development of a portion of the Utah area known as the Ute Trail area. A bitter argument followed during which, at one time, the parties threatened to dissolve all relations between them. However, before the conference ended, the parties agreed to terminate the relationship created by the oral agreement of March 1955. At the close of the discussion, Calhoun prepared, and he and plaintiff executed, a letter agreement which granted to plaintiff 25 per cent of Cal-

[1]In addition to O. H. Calhoun, the defendants are his wife and a partnership of which he was the managing partner. All transactions were with Mr. Calhoun; for convenience, we sometimes have referred to him as though he were the sole party defendant.

houn's profit from the Ute Trail prospect. The letter concluded with the following paragraph:

"The understanding set forth herein represents the complete Agreement between you and the undersigned with respect to the oil and gas leases and the lands covered thereby, within the proposed Ute Trail Unit, and, except as herein set forth, there are no agreements, claims or obligations between you and the undersigned with respect to the subject matter hereof."

Neither the Stone Cabin (Jacks Canyon) area nor the Granby area in Colorado were referred to in the letter agreement, nor was the latter area adverted to in the conference which preceded its execution. After execution of the letter, plaintiff delivered to Calhoun the already prepared geological report, and Calhoun delivered to plaintiff a check for $500 in payment of his final monthly retainer. Plaintiff's endorsement and cashing of this check acknowledged it as being payment in full for services theretofore rendered.

Having received no payments from Calhoun, subsequent to the $500 check on February 22, 1956, either under the original oral agreement or under the letter agreement, plaintiff filed the present action on December 20, 1957. The case ultimately went to trial on a fifth amended complaint, an answer thereto, and a cross-complaint by defendants and answer thereto. The fifth amended complaint alleged the original oral agreement, asserted that, under it, plaintiff and Calhoun were joint venturers as to the Granby Anticline area in Colorado, the Ute Trail area in Uintah County, Utah, and the Stone Cabin area (Carbon Canyon, Utah, also known as the Jacks Canyon area). He claimed a 50 per cent interest in Calhoun's net profits from these three areas. The complaint further alleged an oral agreement in December 1955, modifying the percentage arrangements, but alleged that it had been breached by defendants. The complaint mentioned the letter agreement of February 22, 1956, but did not seek relief thereunder. The answer admitted an original oral agreement, but alleged that plaintiff's percentage thereunder was to be 10 per cent and not 50 per cent, denied the alleged modification in December 1956, pleaded execution of the February 22, 1956, letter agreement but alleged that it was obtained by duress and sought its cancellation. Defendants' cross-complaint alleged misconduct by plaintiff entitling them to damages and to relief from the 10 per cent percentage obligation.

After a lengthy trial, the court made findings to the effect that there had been an oral agreement, but adopting defend-

ants' contention that plaintiff's share of net profits thereunder was to be only 10 per cent. ▮▮▮ The court, in its Finding No. 5, further found as follows:

"On February 22, 1956, plaintiff and defendant, O. H. Calhoun, met at the latter's office on Lido Island, Orange County, California. At said meeting the parties mutually agreed to terminate and cancel the agreement described in Finding 1 [the original oral agreement] and to dissolve and abandon the business relationships existing between them arising out of said contract."

It further found that, at the time of such termination "and within one year thereafter" defendants owned certain leaseholds in the Uintah and Carbon Counties areas, which it delineated in the findings. The court found against plaintiff as to the alleged oral modification in December 1955, and that the February 22, 1956, letter agreement was void by reason of duress and had been abandoned by mutual consent. It also found that the parties had abandoned and mutually terminated any agreements they might have had as to any properties, wherever situated, other than in the Ute Trail and Jacks Canyon (Stone Cabin) areas described in detail in the findings. The court found against defendants on their cross-complaint.

Counsel have briefed this appeal as though we, and not the trial court, were vested with the power to pass on conflicts in the evidence. This, of course, is not the law. Since we have concluded that, except as to certain matters, the findings are supported by the evidence, our discussion need not expand on the detailed testimony which was produced during eight trial days.

I

No serious dispute can be made as to the existence of evidence to sustain the finding that plaintiff's rights, so far as based on the original oral agreement, are limited to 10 per cent of defendants' net profits from the areas covered thereby.

▮▮▮ In its Conclusion of Law No. 1, the court declared:

"... net losses of the joint venture shall be borne in the same proportion, i.e., 90 per cent of said losses to be borne by defendants and 10 per cent of said losses to be borne by plaintiffs [sic]."

No finding of fact supports this conclusion and it was not carried forward into the judgment ultimately entered. De-

fendants admit that the parties never discussed the matter of losses, agreeing only as to a sharing of net profits. They contend, however, that the conclusion above quoted follows as a matter of law, relying on *Parker* v. *Trefry* (1943) 58 Cal. App.2d 69, [136 P.2d 55], and *Oakley* v. *Rosen* (1946) 76 Cal.App.2d 310 [173 P.2d 55], wherein it is stated to be the rule that the parties to a joint venture will be presumed to have agreed to share losses in the same proportion as they agreed to share profits. However, in *Kovacik* v. *Reed* (1957) 49 Cal.2d 166 [315 P.2d 314], the Supreme Court recognized an exception to this rule in cases where one party contributes only time, effort and services, all the capital being provided by the other venturer. At page 170, the court stated:

"The rationale of this rule ... is that where one party contributes money and the other contributes services, then in the event of a loss each would lose his own capital—the one his money and the other his labor. Another view would be that in such a situation the parties have, by their agreement to share equally in profits, agreed that the values of their contributions—the money on the one hand and the labor on the other—were likewise equal; it would follow that upon the loss, as here, of both money and labor, the parties have shared equally in the losses."

Although, here Calhoun contributed both money and services, we think the rationale of the *Kovacik* case still applicable. It is here equally true that, if there be losses, the capital, whether by service or money, is lost in the same proportion as it was contributed and that the parties have impliedly agreed on the values of these contributions in fixing the 90-10 ratio. Since the portion of the conclusion of law above quoted is not supported by evidence of any agreement, and since, apart from such agreement, it is erroneous, it must be stricken.

## II

▇▇ The parties have discussed, at length, the question as to how far California recognizes the doctrine of "economic duress" and whether or not plaintiff's refusal to deliver a geological report amounted to such duress, thereby vitiating the written agreement of February 22d. The problem is interesting, but we need not decide it. The trial court also found that the letter agreement of February 22, 1956, had been abandoned by both parties thereto, by mutual consent. Although there is some conflict on the point, there is ample evidence to support this latter finding. Under the circumstances, it becomes immaterial that the letter agreement may

have been ineffective for some additional reason.[2]

### III

■ Although the trial court found that the written agreement of February 22d had been abandoned, it nevertheless found that plaintiff had thereby relinquished all rights except to the Ute Trail area described therein. Clearly, an agreement which was void for duress, or which was abandoned by mutual consent, must fall as to all its parts; defendants cannot repudiate it as to some clauses and rely on it as to others. Defendants concede this argument and agree that, as to the Granby Anticline area in Colorado, there was no evidence that plaintiff had ever agreed to relinquish his claims. They contend merely that, since the evidence shows that defendants do not now hold any lands or leases in that area, the omission is without prejudice. We hold that, whether or not defendants choose hereafter to develop this "prospect," plaintiff has a right to a 10 per cent participation in defendants' profits from any such development if it should hereafter take place.

■ We have heretofore quoted the trial court's Finding of Fact No. 5. If this finding, and Finding of Fact No. 9, were intended to mean that the parties first orally agreed to *abandon* the original agreement, then rescinded that abandonment by the letter agreement, and then abandoned the letter agreement, it is clear that the Finding is without support in the evidence. Except as subsequent conduct breathes life into them, mere intemperate words used in negotiation are not to be taken as a final agreement. It is clear that neither plaintiff nor Calhoun regarded their mutual expressions of disesteem as being more than preliminary skirmishing leading to an ulti-

[2]Plaintiff argues that the duress discussed in defendants' briefs on appeal is not shown to have existed. Defendants now contend that Calhoun was under an economic compulsion to complete the formalities involved in "unitizing" the Ute Trail area by June 1, 1956, that he could not do this without the geological report which plaintiff was withholding, and that time and other limitations prevented him from procuring a substitute report from another geologist. Plaintiff points out that the only contract which imposed June 1, 1956, as an absolute deadline was not executed until April 2, 1956, and could not have influenced Calhoun six weeks earlier. However, we cannot say that these circumstances were the only factors in the nature of economic pressure on Calhoun in February nor that the trial court necessarily erred in its ultimate finding that Calhoun was under some form of economic compulsion when he dictated and signed the letter agreement. For reasons pointed out in the text, we do not decide whether or not duress in law existed.

mate adjustment. The record does amply justify a finding that, on February 22, 1956, the parties did agree to *terminate* the relationship between them as to future analyses of logs by plaintiff and as to future submission of new prospects by him to Calhoun. To this limited extent, the finding was proper; it should be revised accordingly. But, as we discuss hereafter, *termination* and *dissolution* of the joint venture does not itself affect rights theretofore vested in either party.

■ Defendants contend that the findings that plaintiff relinquished all rights in the Uintah Basin (Wasatch formation) other than the two areas granted him by the judgment can be supported on either of two theories; (a) that plaintiff's complaint alleged an interest in these two areas only; and (b) that the evidence shows that the parties had agreed that only these two areas were "prospects" in which plaintiff could share.

It is true that plaintiff's complaint alleged a joint venture only as to the Granby, Ute Trail and Jacks Canyon areas. However, the joint pretrial statement, incorporated by reference into the pretrial order, set forth the areas involved as "... the Granby Anticline and the stratographic trap in the Wasatch formation on the southern flank of the Uinta [*sic*] syncline aided by certain structural features." The case went to trial on the issue thus stated and, at the close of trial, a motion to amend the complaint to include the entire Uintah Basin was made and granted; it is now too late to claim an estoppel by pleading.

■ It is clear from the evidence that the term "prospect," used by the parties in their original oral agreement, is not one having any fixed or recognized meaning in the oil and gas business or in the context in which it has been used in this case. There was evidence which, if accepted by the trial court, would have restricted its meaning to an area not only proposed by plaintiff but accepted by Calhoun as a profitable and worthwhile venture after his own investigation and the scrutiny of other experts. There was testimony that, measured by this definition, only the Ute Trail and Jacks Canyon areas had ever reached the status of a "prospect" out of the large area in the Wasatch formation which plaintiff had investigated. However, there was also evidence that Calhoun was interested in other areas in the Uintah Basin, that, prior to February 22, 1956, he had already acquired some holdings outside the two mentioned, although his activities had not proceeded as far as those in the Ute Trail area where plans for a formal "unit" were well under way. In fact, Calhoun

at one point insisted that part of the consideration for giving plaintiff 25 per cent of the profits in Ute Trail in the written agreement was plaintiff's relinquishment of any claim to the rest of the Uintah Basin. The trial court based its finding of abandonment expressly on the events of February 22, 1956, made no findings on this body of testimony and made no attempt to resolve any of the conflicts therein. Since, as we above pointed out, the basis for the court's finding was erroneous, it follows that we can not know what result it would have reached had it started from a correct premise. The matter must be remanded for further determination.

## IV

■ The trial court limited plaintiff's rights to interests acquired by defendants during the period from April 1, 1955, through February 22, 1956, and "within one year thereafter." We can find no support in the record for this time limitation. It is true that, as we have pointed out above, the agreement for submission of new prospects ended on February 22, 1956; but as to prospects submitted by plaintiff before that date, his rights had vested on submission and are not limited by the length of time which defendants might utilize in developing such propsects. (*Freese* v. *Smith* (1952) 114 Cal.App.2d 283 [250 P.2d 261].) Prima facie it appears that plaintiff is entitled to a judgment that defendants hold for his benefit all interests which they have heretofore acquired, or may hereafter acquire, in such areas submitted by plaintiff for consideration prior to February 22, 1956, as the trial court, on remand, shall find were "prospects" within the meaning of that term in the original oral agreement.

Defendants contend that plaintiff, after February 22, 1956, submitted for consideration, to other promoters, portions of the Uintah Basin outside of the ones to which the trial court had limited him in the judgment, and that this constituted an abandonment of any rights he might have against defendants by reason of any prior submission of these same areas to Calhoun. The trial court found, in denying defendants relief under their cross-complaint, that plaintiff's post-February activities were not unlawful. Prior to February 22, 1956, plaintiff was under a duty to submit "prospects" to Calhoun only; after that date, he was free to submit prospects to others. ■ Except where bound by a contract for exclusive dealing, one may tender a business opportunity to as many persons as he desires, with rights against the first one to accept and act on the tender.

The judgment is affirmed insofar as it (a) adjudges that plaintiff is entitled to 10 per cent of the net profits attributable to the parcels of land particularly described therein, (b) denies defendants relief under their counterclaim and dismisses said counterclaim, (c) denies costs to either party; it is reversed insofar as it fails to adjudge that plaintiff is entitled to 10 per cent of the net profits attributable to other parcels of land, and the case is remanded to the trial court with directions:

(a) To strike from Conclusion of Law No. 1 the following language: ''and one year thereafter; net losses of the joint venture shall be borne in the same proportion, i.e., 90 per cent of said losses to be borne by defendants and 10 per cent of said losses to be borne by plaintiffs.''

(b) To strike from the second sentence in Finding of Fact No. 5 the words ''and cancel'' and the words ''and abandon,'' so that said Finding shall read as follows: ''On February 22, 1956, plaintiff and defendant O. H. Calhoun, met at the latter's office on Lido Island, Orange County, California. At said meeting the parties mutually agreed to terminate the agreement described in Finding 1 and to dissolve the business relationships existing between them arising out of said contract.''

(c) To strike Finding of Fact No. 7 and to substitute therefore a new Finding of Fact No. 7, reading as follows:

''On February 22, 1956, the parties signed the letter agreement bearing that date, plaintiff's Exhibit 12, in evidence.''

(d) To strike Findings of Fact Nos. 10, 13 and 14 in their entirety.

(e) To strike Conclusions of Law Nos. 2, 3, 10 and 11 in their entirety.

(f) To make new Findings of Fact, based on the evidence already introduced, and consistent with this opinion, determining: (1) the meaning of the word ''prospect'' as used by the parties in the oral agreement described in Finding of Fact No. 1; (2) the areas of land (including the area known as the Granby Anticline Area), described by their proper legal descriptions, which plaintiff had submitted to defendants prior to February 22, 1956, and which fall within the meaning of the term ''prospect'' as so found.

(g) To make new Conclusions of Law, in accordance with said Findings as so revised and made, confirming in plaintiff a right, against defendants and any person or persons claiming under defendants, to 10 per cent of the net profits heretofore or hereafter received from any and all areas found by the

court to have been "prospects" within the meaning of that term as found by the court and submitted by plaintiff to defendants prior to February 22, 1956, regardless of the date of acquisition of said properties or the date of their development.

(h) To enter a new judgment accordingly.

Each party shall bear his own costs on appeal.

Burke, P. J., and Jefferson, J., concurred.

Petitions for a rehearing were denied November 19, 1963, and appellant's petition for a hearing by the Supreme Court was denied December 18, 1963.