G. RAYMOND BECKER et al., Plaintiffs-Appellants, v. THOMAS KILLAR-NEY et al., Defendants-Appellees.

Third District   No. 3—87—0714

Opinion filed December 28, 1988.—Rehearing denied February 7, 1989.

Bartley, Fraser, Parkhurst & Hession, of Peoria (John C. Parkhurst, of counsel), for appellants.

Heyl, Royster, Voelker & Allen, of Peoria, and Naomi H. Schuster and Kimberly A. Opasinski, both of Sosin & Schuster, Ltd., of Alsip (Timothy L. Bertschy, of counsel), for appellees.

JUSTICE SCOTT delivered the opinion of the court:

It is rare that parties come together, form a partnership, and plan to lose money in their endeavor. Nevertheless, the old saw teaches that the "best laid plans of mice and men" will occasionally go awry. This is the legal culmination of just such an ill-fated endeavor.

Prior to June 1975, First Federal Savings and Loan Association of Peoria advanced money for the expansion of the Voyager Inn, an existing hotel in downtown Peoria. Before the expansion was complete, First Federal had taken possession of the property as mortgagee. Thereupon, First Federal entered into negotiations with G. Raymond Becker, one of the plaintiffs, to strike a deal under which Becker would take over the parcel and complete the hotel addition. In furtherance of that deal, Becker formed the partnership which was to become the subject of the instant dispute.

Becker assembled a partnership team that included parties with various skills and services that could be valuable to the enterprise. He himself was a developer and president of a construction company, Gordon E. Burns was an architect, John P. Dailey was a financier, John C. Parkhurst was an attorney, and Rosel was the prospective hotel manager. These original five partners entered into a formal written agreement on June 20, 1975. None of the original five partners funded the partnership with any cash capital, but each agreed

to contribute his services; the evidence adduced in the trial court establishes that the five partners did so throughout the partnership's operation of the hotel.

With the exception of Rosel, and his successor White, who also managed the hotel, the original partners were not compensated for their services. Salaries were prohibited by the partnership agreement. The cash contributions necessary to get the partnership off the ground came from Thomas Killarney and Bernard Feely. Within months following the original formation of the partnership, Killarney had contributed $160,000 for an 8% interest and Feely had contributed $100,000 for a 5% interest. Both Killarney and Feeley had been previous business associates of Becker, and both signed identical amendments to the partnership agreement setting forth the rights and obligations of the new partners.

The project proceeded, aided by a $10,500,000 non-recourse first mortgage loan from First Federal and credit extended by the contractor, Becker Bros., Inc., Becker's construction company. The capital contribution of Killarney and Feely provided working capital for the partnership. It appears, however, that the hotel, once constructed and open, was something less than a commercial success. After the hotel had been open for some time, it became necessary to negotiate an additional $500,000 loan from First Federal to be used as working capital. Indeed, the hotel consistently lost money, not just tax-shelter losses but real cash losses, and the losses increased as time passed. In August of 1979, the partners were assessed $100,000 according to their respective interests, in order to raise money to pay the bills. Again in April of 1980, a second assessment of $100,000 was necessary, and all the partners paid their percentage shares.

As the losses mounted, in September 1984 the hotel property was transferred back to First Federal. Unlike the original mortgage loan, not all obligations of the partnership featured non-recourse agreements to protect the partners. A dispute arose as to the obligation of the various partners to pay for these partnership debts and the subject lawsuit resulted. In the circuit court of Peoria County, four of the original partners, Becker, Burns, Dailey and Parkhurst, complained for a money judgment against the two defendant partners, Killarney and Feely, for their shares of the partnership debts. The defendant partners counterclaimed, alleging that the plaintiffs owed money to the partnership. After a trial extending for a period of weeks, the Peoria court entered judgment against the plaintiffs and for the defendants. The plaintiffs appeal that judgment.

The circuit court concluded the law required that the partnership

capital accounts of Killarney and Feely should reflect their cash contributions and be applied to their share of the net loss; that is, the net losses of the partnership should be calculated according to each partner's percentage commencing with the first dollar of loss, and not simply those losses which exceeded the original capital contributions of Killarney and Feely. The plaintiffs, those partners who contributed services rather than cash to the partnership, believe the circuit court erred in permitting the "cash partners" to apply their original investments totaling $260,000 against their share of the losses.

In Illinois, the relations among partners are governed by the Uniform Partnership Act (Ill. Rev. Stat. 1987, ch. 106½, par. 1 *et seq.*). That act provides for the settling of accounts between the parties, specifically:

"In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:

(a) The assets of the partnership are:

I. The partnership property,

II. The contributions of the partners necessary for the payment of all the liabilities specified in clause (b) of this paragraph.

(b) The liabilities of the partnership shall rank in order of payment, as follows:

I. Those owing to creditors other than partners,

II. Those owing to partners other than for capital and profits,

III. Those owing to partners in respect of capital,

IV. Those owing to partners in respect of profits." (Ill. Rev. Stat. 1987, ch. 106½, par. 40.)

The circuit court, relying on the statute, concluded that the $260,000 capital contribution of the "cash partners," Killarney and Feely, was a liability of the partnership and therefore subject to contributions from all the partners for payment.

The plaintiffs urge that such an unbending application of the statute yields an unfair and inequitable result. Killarney and Feely, the cash partners, ᴣceive a preference in the payment of their contribution to the partnership because that contribution was made in cash, but Becker, Dailey, Burns and Parkhurst receive no payment for their contribution because it was made in the form of services. One might reasonably assume that the partners themselves determined the services, skill and know-how of the plaintiffs to be of pro-

portionate value to the partnership as the partners' shares of the profits; there was no preference in sharing profits (or losses) for those who contributed cash as opposed to services.

The "service partners" urge that equity and fairness demand that their contribution of services, skill, know-how or "sweat-equity," however it be labeled, must be accounted for in the same manner as the cash contribution of the "cash partners." The plaintiffs cite no provision of the Uniform Partnership Act in support of their position, but argue instead that where the Act is silent, the general principles of law and equity apply (Ill. Rev. Stat. 1987, ch. 106½, par. 5), and equity would militate against this unjust enrichment of the defendants. The plaintiffs rely on the California court's decision in *Kovacik v. Reed* (1957), 49 Cal. 2d 166, 315 P.2d 314, as the correct rule of law in cases such as this.

■ The *Kovacik* court, while recognizing the general rule with respect to loss sharing among partners, also notes:

"[I]t appears that in the cases in which the above stated general rule has been applied, each of the parties had contributed capital consisting of either money or land or other tangible property, or else was to receive compensation for services rendered to the common undertaking which was to be paid before computation of the profits or losses. Where, however, as in the present case, one partner or joint adventurer contributes the money capital as against the other's skill and labor, all the cases cited, and which our research has discovered, hold that neither party is liable to the other for contribution for any loss sustained. Thus, upon loss of the money the party who contributed it is not entitled to recover any part of it from the party who contributed only services. *** [I]n such a situation the parties have, by their agreement to share equally in profits, agreed that the value of their contributions—the money on the one hand and the labor on the other—were likewise equal; it would follow that upon the loss, as here, of both money and labor, the parties have shared equally in the losses." (*Kovacik*, 49 Cal. 2d at 166, 315 P.2d at 316.)

We find the rational set forth in *Kovacik* to be persuasive, inconsistent with no express provisions of the Uniform Act, and consistent with long-held equitable principles which form the foundation of our jurisprudence.

■ The defendants would have us conclude that *Kovacik* is inconsistent with section 40 of the Uniform Act. We disagree. While the liabilities of the partnership may well include payments "owing

to partners in respect of capital," we do not agree that such capital cannot be intangibles such as special skills or know-how as well as tangibles such as cash. In fact, it is more likely that the parties "by their agreement to share equally in profits, agreed that the value of their contributions—the money on the one hand and the labor on the other—were likewise equal." *Kovacik*, 49 Cal. 2d at 166, 315 P.2d at 316.

■ Likewise, we find no inconsistency between the *Kovacik* rule and the express provisions of the partnership agreement itself. Defendants' expert finds such an inconsistency in a provision in the two agreement amendments which reads as follows:

> "Additional cash contributions of capital may be made by any or all of the partners from time to time and any such cash contributions shall be returned to such partners before any distribution of assets is made upon the sale of assets or dissolution of the partnership."

The experts who testified were not unanimous as to the meaning and application of the quoted provision. It is ambiguous, but in its ambiguity, it is not inconsistent with the unique rule of *Kovacik*.

For the reasons stated, we agree that in cases such as this, the *Kovacik* rule should apply. Equity requires that the value of services be recognized and capitalized, so as to prevent unjust enrichment. Absent an agreement to the contrary, and we find no such agreement under the instant facts, *Kovacik* should apply. We direct the circuit court to apply the principles therein and enter judgment accordingly.

Reversed and remanded.

STOUDER, P.J., and WOMBACHER, J., concur.