AL WIEGAND, INC., Plaintiff-Appellant and Cross-Appellee, *v.* WIEGAND CONCRETE PRODUCTS, INC., Defendant-Appellee and Cross-Appellant.

Third District   No. 77-390

Opinion filed November 30, 1978.

Carl F. Reardon, of Moehle, Reardon, Smith & Day, Ltd., of East Peoria, for appellant.

Michael O. Gard and Gregory S. Bell, both of Swain, Johnson & Gard, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Al Wiegand, Inc., commenced this action against defendant, Wiegand Concrete Products, Inc., for an accounting of certain transactions engaged in by a joint venture formed by plaintiff and defendant. Defendant counterclaimed seeking a complete accounting. The circuit court entered judgment in favor of defendant for $11,710.04, but upon plaintiff's post-trial motion, reduced the amount of the judgment to $1,139. Both parties have appealed from the trial court's order.

Plaintiff is a corporation owned by Alvin Wiegand and his wife and sons. Defendant is a corporation owned by John Wiegand, Alvin's brother.

This suit centers upon an oral joint venture agreement in which it was

agreed that each party would recover only its costs for performing joint venture work and any profits from the joint venture would be divided equally. The basic dispute involves the determination of costs, with each party attempting to maximize its own costs while minimizing the costs of its opponent.

Six months prior to the formation of the joint venture, Al Wiegand began his own sewer contracting business through plaintiff, drawing upon a number of years of experience that he had in the field. Subsequently, John and Alvin agreed that plaintiff and defendant would form a joint venture for the purpose of bidding and performing sewer construction jobs. The joint venture was formed for the purpose of increasing the parties' bonding power and thereby enabling the parties to undertake larger and more profitable projects. For the time period in issue here, no written agreement describing the various aspects of the joint venture was ever entered into. The parties orally agreed that neither should profit on the furnishing of labor or material to the joint venture. Each agreed to contribute $4,000 to the joint venture bank account. While it was originally contemplated that only one project would be undertaken, 10 jobs were completed between November 1, 1973, when the joint venture was formed, and April 30, 1975, when the joint venture was officially dissolved.

During the trial, the court, with the agreement of the parties, appointed an independent certified public accountant to prepare a report to assist the court in deciding the numerous conflicting claims.

Three issues are presented for our consideration. First, whether the trial court erred in not allowing plaintiff to recover certain expenses for repairs to equipment used on joint venture projects; second, whether the trial court erred in denying plaintiff interest on monies he provided to the joint venture; and finally, whether the court erred in using the double-declining-balance method of depreciation in determining the costs for depreciation of equipment plaintiff supplied to the joint venture. We affirm.

■■ Turning to the first issue, in performing the various sewer projects plaintiff supplied several pieces of heavy equipment which were owned by Al Wiegand. For the fiscal year ending April 30, 1974, plaintiff incurred expenses of $1,116.69 in repairing this equipment. For the fiscal year ending April 30, 1975, the expenses were $1,414.35 and for the year ending April 30, 1976, the expenses were $15,789.35. The joint venture ceased doing any work in December of 1974 and was dissolved on or about April 30, 1975. At trial plaintiff sought to recover a portion of the repair expenses paid during fiscal 1976 by totalling the repair expenses over the entire three-year period and then prorating the average annual expense to the years the joint venture was in effect. The trial court did not make any

allowance for the repairs made in fiscal 1976, but did allow plaintiff to recover his repair expenses for the two preceding years. At trial and on appeal plaintiff claims that the repairs made in fiscal 1976 were in part the result of use of the equipment on joint venture work and he is thereby entitled to recover some of the 1976 repair expenses. We believe the trial court properly refused to make any allowance for the 1976 repairs. As the trial court correctly observed, the record is devoid of any evidence explaining what repair work was done in fiscal 1976 or what caused the need for the repairs. Even assuming the validity of plaintiff's argument, it was incumbent for plaintiff to introduce evidence confirming that these repairs were in fact the result of joint venture work. Without such evidence, the cause of the repairs is purely speculative. As pointed out by one witness, these repairs may have been caused by neglect or misuse. Furthermore, we note that without evidence as to the nature of these repairs, it is impossible to determine whether all or part of the costs of repairs in 1976 should be considered a current revenue expense or a capital expenditure to be added to the adjusted cost basis of the asset.

The second issue we face concerns the age-old recurring question of whether a payment by one partner or joint venturer on behalf of the business enterprise is a contribution to capital or is instead what could be succinctly described as a loan. During the operation of the joint venture, most of the labor force was on plaintiff's payroll. When the joint venture began, plaintiff had $57,000 in a checking account which he used to meet current payroll expenses and to pay promptly for materials in order to obtain discounts. According to plaintiff's witnesses, approximately two months elapsed between the time plaintiff made these payments and when it was reimbursed by the joint venture for these expenditures. Plaintiff, relying on section 18(c) of the Uniform Partnership Act (Ill. Rev. Stat. 1975, ch. 106½, par. 18(c)) and *Levy v. Leavitt* (1931), 257 N.Y. 461, 178 N.E. 758, contends that it is entitled to interest on the money advanced by it from the time the money was first advanced until plaintiff was reimbursed, usually two months later.

Defendant, relying on section 18(d) of the Uniform Partnership Act (Ill. Rev. Stat. 1975, ch. 106½, par. 18(d)), responds that because of an agreement, the monies plaintiff used to meet the payroll expenses are a contribution to capital and therefore plaintiff is not entitled to an allowance for interest.

■■ One of plaintiff's accountants testified that he met with representatives of both parties to discuss alternatives for providing money to fund expenses for labor and materials. One alternative was that each party contribute a substantial amount of money and pay all invoices for labor and materials out of a joint venture account. The other

alternative discussed was that each party could pay its own labor and materials and bill the joint venture afterward. A decision was reached at that meeting to adopt the latter alternative for the reason that it did not require the parties to place substantial amounts of cash into the joint venture account. In light of the foregoing agreement, we can only conclude that monies advanced by either party to meet payroll expenses and material costs constituted a contribution to capital, which according to section 18(d) of the Uniform Partnership Act, bears interest only from the date repayment should be made. No claim is made that repayment did not occur when it was supposed to. We do not dispute the authorities relied upon by plaintiff, but disagree with plaintiff's premise that the only contribution to capital was the original $4,000. Having discussed various means of providing sufficient money to meet operating expenses and deciding on the arrangements previously stated, we believe that plaintiff made a contribution to capital when meeting payroll and material expenses. The trial court did not err in denying plaintiff's claim for interest.

We turn now to the issue of depreciation. Plaintiff claims that it is entitled to recover as part of its costs depreciation of the heavy equipment based upon the double-declining-balance method. Defendant argues that the use of the double-declining-balance method overstated plaintiff's actual costs and the straight-line method should be used instead. The trial court initially allowed only straight-line depreciation for both parties, but upon plaintiff's post-trial motion, allowed plaintiff double-declining-balance depreciation.

■■ In a report prepared by the court-appointed accountant, depreciation of the plaintiff's equipment was determined using the double-declining-balance method, whereas the depreciation of defendant's equipment was determined using the straight-line method. The accountant explained that the two different methods were used because each had been adopted by the respective parties. In resolving this issue it is important to recognize that defendant does not argue that the same method of depreciation must be used in determining each party's depreciation costs, but rather that only the straight line method was proper. Defendant advances this argument because plaintiff's equipment is new and defendant's equipment is old, and the double-declining-balance method generally results in a higher depreciation allowance than the straight-line method during the first years, but a lower depreciation allowance than the straight-line method in later years.

Defendant supports its argument by comparing the fair market value of plaintiff's equipment at the end of the joint venture first with the basis of plaintiff's equipment determined by using the double-declining-balance method and then with the basis of plaintiff's equipment using the straight-

line method. According to defendant, since the basis using the straight-line method more nearly approximates fair market value at the end of the joint venture, straight-line should be used.

During trial, the court-appointed accountant testified that the report was prepared according to generally accepted accounting principles. His testimony about depreciation is enlightening.

> "Normally, depreciation is in the accounting sense, is an attempt to recover costs against profits through a consistent manner, and unless equipment is absolutely worthless while it is in use, you do not normally concern yourself with the fair market value of that equipment from time to time. You work with historical cost with a consistent provision of depreciation against profits from year to year, so it may or may not approximate market value."

When asked the purpose of this method of depreciation, the accountant answered "For financial statement purposes, it's an attempt to match the true—it's usually adopted to match the true depreciation of the item depreciating." When asked during his testimony, "Do you think it was inappropriate to use double declining balance?" the court-appointed accountant responded, "No." In light of this testimony, we believe the trial court's decision is supported by the evidence.

As testified by the court-appointed accountant, fluctuations in fair market value do not generally affect depreciation. Should the fair market value of a depreciable asset drop below the adjusted basis at some point in time during the useful life of the asset, it is not generally allowable to increase the depreciation deduction for that year. Conversely, if the fair market value of a depreciable asset increases above adjusted basis because of inflation, the amount of depreciation should not generally increase. "In some cases, of course, the net difference between the asset account and its accumulated depreciation account may approximate the then market value of the asset; but it is emphasized at the outset that the main function of depreciation accounting is not to bring book value into line with market value. Instead depreciation accounting is primarily a cost allocation process." Faris, Accounting for Lawyers 85 (rev. ed. 1964).

For the foregoing reasons the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

BARRY, P. J., and SCOTT, J., concur.