CENTURY UNIVERSAL ENTERPRISES, INC., Plaintiff-Appellant, v. TRIANA DEVELOPMENT CORPORATION *et al.*, Defendants-Appellees.

Second District No. 2—86—0799

Opinion filed July 9, 1987.

184

David Drenk and Douglas Drenk, both of Drenk & Drenk, Ltd., and James P. Moran, of Guerard, Kalina, Musial, Ulrich & Varchetto, both of Wheaton, for appellant.

Richard S. Huszagh and Reuben A. Bernick, both of Rudnick & Wolfe, of Chicago, for appellees.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Century Universal Enterprises, Inc. (CUE), appeals from an order of the Du Page County circuit court granting defendants', Triana Development Corp. (Triana), Jeffrey Hyman (Hyman) and Gary Rosen (Rosen), motion to dismiss pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), plaintiff's first amended complaint and denying plaintiff's motion for leave to file its second amended complaint. The issues raised on appeal are: (1) whether the trial court erred in dismissing plaintiff's complaint for failure to state a cause of action; and (2) whether the trial court abused its discretion in denying plaintiff's motion for leave to file its second amended complaint. We affirm in part, reverse in part and remand with directions.

This action arose as a result of a joint venture agreement entered into by the parties to this suit for the development of real estate in Florida. In October 1982, CUE entered into a written joint venture agreement (agreement) with Hyman and Rosen as "developers" to acquire and develop real estate in Florida. Hyman and Rosen formed Triana, a corporation created for the purpose of carrying out the du-

ties of the "developers" under the agreement, and each of them was an officer and a 50% shareholder. Under the agreement, CUE and the "developers" each owned 50% of the venture. Hyman and Rosen "jointly and severally" personally guaranteed the performance of the "developers" as per the terms of the agreement. The venture formed by the parties was known as Wespalm. In the period of time between the beginning of the venture through June 30, 1984, Hyman and Rosen were paid at a monthly rate of $6,000 pursuant to the agreement for a total sum of $68,000.

In its complaint plaintiff alleged that since its beginning Wespalm proved to be unprofitable. CUE claimed that it contributed $1,272,000 to the venture, as capital contribution, which money was lost because of the continued unprofitability of Wespalm. Therefore, pursuant to section 7.03 of the agreement, describing the procedure to be followed if the venture must be terminated on the basis of default by either party, in January 1985 CUE sent a "Notice of Default" letter to defendants demanding that defendants pay $591,626, which according to CUE constituted half of the deficits for the fiscal year ending June 30, 1984.

In March 1985, defendants notified plaintiff that they "disclaim any obligation with respect to the said deficit and any capital deficits *** with respect to the Wespalm venture ***." The letter further stated that defendants "will terminate all activity at the project site or on behalf of Wespalm Venture." A few days later, CUE, pursuant to the terms of the agreement governing termination, gave defendants a final notice of termination and expressed its intention to liquidate the venture.

In July 1985, plaintiff filed a two-count complaint against Triana and its two shareholders, Hyman and Rosen. In count I, CUE sought damages against defendants for breach of the agreement. Count II of the complaint sought recovery against Hyman and Rosen personally based on their personal guarantees of Triana's obligations under the agreement. Defendants moved to strike the complaint. Before the court ruled on this motion, plaintiff withdrew its complaint and filed in January 1986 a nine-count first amended complaint. In count I of the first amended complaint plaintiff alleged a breach of the agreement based on defendants' failure to reimburse CUE for 50% of the capital losses it had incurred. Count II alleges Hyman and Rosen breached their guarantees regarding Triana's performance and were, therefore, personally liable to plaintiff for half of the capital losses. Count III, against Hyman and Rosen, alleged that Triana was the alter ego of these two individual defendants, and, as such, Hyman and

Rosen were personally liable to plaintiff. Count IV sought to hold Hyman and Rosen personally liable based on "promoter liability." In counts V and VI, CUE alleged that defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 et seq.) (CFDBPA). Count VII alleged a claim for fraud in the inducement. In count VIII, CUE sought recovery under a common law fraud theory. Count IX was for negligent misrepresentation. Plaintiff attached to the complaint a copy of the agreement, its notice of default, and the final notice of termination.

Defendant filed a motion to dismiss plaintiff's first amended complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). The trial court entered an order pursuant to a written letter of opinion granting defendants' motion dismissing with prejudice all counts of plaintiff's complaint except for count VII, which was dismissed with leave to replead.

Thereafter, CUE filed a timely petition for rehearing requesting the trial court to vacate or modify its order. Simultaneously, plaintiff filed a motion for leave to file an 11-count second amended complaint. Nine of these counts raised the same claims as those raised in CUE's first amended complaint, including the fraud count contained in count VII of the first complaint. Two weeks later, plaintiff filed an amended motion for leave to file a 15-count second amended complaint. A copy of the proposed pleading was attached to the amended motion.

The trial court filed a second letter of opinion and entered an order denying plaintiff's petition for rehearing and plaintiff's amended motion for leave to file the 15-count second amended complaint. This appeal ensued.

Plaintiff contends that the trial court erred in granting defendants' section 2—615 motion (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) on the ground that plaintiff's complaint raised issues of fact which could not be resolved on the pleadings.

■■ ■ Generally, a cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which entitle plaintiff to recover. (Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co. (1986), 114 Ill. 2d 278, 286, 499 N.E.2d 1319.) Additionally, all facts which are well pleaded are to be construed as true, as well as all reasonable inferences favorable to the nonmoving party which can be drawn from those facts. (Morrow v. L. A. Goldschmidt Associates, Inc. (1984), 126 Ill. App. 3d 1089, 1096, 468 N.E.2d 414.) We analyze each count of plaintiff's first amended complaint in light of these principles.

Count I of the complaint for breach of contract is based on plaintiff's contention that under the agreement defendants were obligated to pay their proportionate share of losses, including capital losses. The relevant allegations are reproduced verbatim below:

"9. Section 4.01 of the AGREEMENT provided:

(a) Contemporaneously with the execution of this Agreement, COMPANY [CUE] has contributed to the VENTURE TEN THOUSAND ($10,000.00) DOLLARS, such contributions to be hereinafter referred to as 'Initial Capital Contribution.'

(b) Said Initial Contribution is hereby credited to the capital amount of the COMPANY;

10. Section 4.02(a) of the AGREEMENT provided:

(a) Any one or more of the VENTURERS shall have the right to contribute to the VENTURE such additional sums of money, in cash, as such VENTURER desires. All amounts so contributed shall be credited to the capital account of the VENTURER making such contributions, but shall not change the Venture Ownership Percentage Interests (as hereinafter defined) of the VENTURERS. The aggregate of the Initial Capital Contribution, and any contributions made pursuant to this subsection are hereinafter referred to as the 'total Capital Contributions.' In no event shall any loans from LYONS SAVINGS AND LOAN ASSOCIATION be considered as Capital Contribution;

11. In furtherance of its duties and obligations under Sections 4.01 and 4.02(a) of the AGREEMENT, CUE furnished, supplied and contributed from the inception of the AGREEMENT to the present a sum in excess of ONE MILLION TWO HUNDRED SEVENTY TWO THOUSAND ($1,272,000.00) DOLLARS as capital contribution to the Joint Venture (hereinafter referred to as 'WESPALM');

12. WESPALM was, at all relevant times, an unprofitable Joint Venture, which lost all monies contributed to it, and CUE suffered as a loss all the aforementioned monies contributed as capital to WESPALM;

13. Section 1.01(b) of the AGREEMENT provided:

(b) Except as herein expressly provided to the contrary, the rights and obligations of the VENTURERS and the administration and termination of the VENTURE shall be governed by the Illinois Uniform Partnership Act. A VENTURER's interest in the VENTURE shall be personal property

for all purposes. All real and other property owned by the VENTURE shall be deemed owned by the VENTURE as an entity, and no VENTURER shall have any individual ownership of such property;

14. The aforementioned Illinois Uniform Partnership Act, Ill. Rev. Stat. ch. 106-½, par. 1 *et seq.* provides in paragraph 18, "Each partner *** must contribute towards the losses, with capital or otherwise, sustained by the partnership according to his share of the profits.";

15. Pursuant to Section 5.05 of the AGREEMENT, TRIANA was to receive fifty percent of all profits earned by WESPALM;

16. At all relevant times herein, TRIANA failed to compensate and reimburse CUE fifty percent of the capital contribution made by CUE in WESPALM in violation of the aforementioned Illinois Uniform Partnership Act, despite demands by CUE for said reimbursement."

Based on these allegations CUE prayed that judgment in excess of $636,000 be entered in its favor.

■ We agree with defendants' assertion that under the general rule one partner cannot, in an action at law, recover money due to him from his copartner for a matter connected with the partnership. (*Purvines v. Champion* (1873), 67 Ill. 459, 461.) The appellate court in *Mayhew v. Craig* (1929), 253 Ill. App. 238, outlined the rationale for this rule:

"(1) a dispute of this nature ordinarily involves the taking of a partnership account, for, until that is taken, it cannot be known that plaintiff is not liable to refund even more than he claims in the particular suit;

(2) in partnership transactions a partner does not as a rule become a creditor or the debtor of a copartner, but of the firm." (253 Ill. App. 238, 241.)

The court in *Schlossberg v. Corrington* (1980), 80 Ill. App. 3d 860, 400 N.E.2d 73, stated that the rule is applicable even in cases where the partnership had been dissolved. 80 Ill. App. 3d 860, 866, 400 N.E.2d 73.

Plaintiff correctly contends that there are several exceptions to the above rule, and these were enumerated in *Marcus v. Green* (1973), 13 Ill. App. 3d 699, 300 N.E.2d 512:

" 'A partner may maintain an action at law against his copartner upon claims growing out of the following facts: *** 5.) Where the partnership is terminated, all debts are paid, and

the partnership affairs otherwise adjusted, with nothing remaining to be done but the amount due by one to the other, such amount involving no complicated reckoning. 6.) *Where the partnership is for a single venture or special purpose, which has been accomplished, and nothing remains to be done except to pay over the claimant's share.'* " (Emphasis in original.) 13 Ill. App. 3d 699, 708-09, 300 N.E.2d 512, quoting *Pugh v. Newbern* (1927), 193 N.C. 258, 261, 136 S.E. 707, 708-09.

■ We reject plaintiff's attempt to fit into one of the other exceptions enumerated above. Specifically, plaintiff argues that the following two exceptions are applicable in this case: (1) that an action may be maintained where the damage belongs exclusively to one partner, and not the firm, and can be asserted without taking an accounting (*Mayhew v. Craig* (1929), 253 Ill. App. 238, 241); and (2) where the partnership was for a single purpose. (*Marcus v. Green* (1973), 13 Ill. App. 3d 699, 709, 300 N.E.2d 512.) In order for plaintiff to meet the test of the first exception, we must accept CUE's argument that, in fact, a reasonable inference from the complaint is that "all debts have been paid and its affairs otherwise adjusted, with nothing remaining to be done but the Defendants' payment of the amount due Plaintiff." We cannot so conclude absent a full accounting. Plaintiff's reliance on *Tichenor v. Newman* (1900), 186 Ill. 264, is inapposite in that that case dealt with a breach of promises which were personally made to Tichenor and not the firm. (186 Ill. 264, 275.) The court stated:

"The benefit to accrue from their [promises] performance would inure to Tichenor individually and not to the firm, and a breach of these undertakings on the part of Newman would result in injury to Tichenor as an individual ***. An adjustment of the damages resulting from the failure of Newman to observe and perform these things which he had undertaken and contracted to do for the purpose of delivering to Tichenor the good will of the business [to personally recommend Tichenor to his patients] could not be considered on an accounting in equity of the partnership accounts." 186 Ill. 264, 275-76.

Even assuming, *arguendo*, that plaintiff's damages resulting from defendants' breach were due by defendant exclusively and not by the venture, we do not agree that an assessment of the amounts owed may be obtained without resorting to an accounting.

■ We also reject plaintiff's contention that an accounting would not be necessary in this case on the basis of the single purpose or single venture exception. This exception applies *"[w]here the partnership*

*is for a single venture or special purpose, which has been accomplished, and nothing remains to be done except to pay over the claimant's share.*" (Emphasis in original.) (*Marcus v. Green* (1973), 13 Ill. App. 3d 699, 709, 300 N.E.2d 512.) In this case the venture may have been formed for the single purpose of developing real estate in Florida, but as defendants correctly point out, this purpose has not been accomplished. Furthermore, certain provisions under the agreement which deal with termination have not as yet been fully complied with, and, therefore, something "remains to be done."

■ The appellate court in *Balcor Income Properties, Ltd. v. Arlen Realty, Inc.* (1981), 95 Ill. App. 3d 700, 420 N.E.2d 612, after a review of the existing exceptions, formulated a new concise rule which had been adopted by other jurisdictions: "The better rule *** is a practical one: one partner *** can bring an action against a co-partner if the plaintiff's claim can be decided without a full review of the partnership accounts. [Citations.]" (95 Ill. App. 3d 700, 702, 420 N.E.2d 612.) We agree with defendants that this case cannot be decided without an examination of partnership accounts. Consequently, plaintiff may not avail itself of this exception either.

In conclusion, we find that since an accounting is necessary for plaintiff to be able to maintain a cause of action we remand the case for an accounting.

We note that the trial court dismissed count I of the first amended complaint on a different basis than the one we addressed above. We believe that given the factual basis of the dispute and the trial court's interpretation of the provisions of the agreement as they affect the substantive basis for count I, the trial court will again be confronted with these issues. Therefore, in the interest of judicial economy, we now address the issue of whether the trial court erred in dismissing count I of plaintiff's complaint on the basis that it did not allege a cause of action for which relief could be granted.

The issue presented in count I is whether defendants are obligated under the agreement to contribute to capital losses proportionate to their partnership share in the joint venture. The two provisions of the agreement which need to be scrutinized in order to resolve this issue are:

> "Any one or more of the VENTURERS shall have the right to contribute to the VENTURE such additional sums of money, in cash, as such VENTURER desires. All amounts so contributed shall be credited to the capital account of the VENTURER making such contributions, but shall not change the Venture Ownership Percentage. Interests (as hereinafter de-

fined) of the VENTURERS. The aggregate of the Initial Capital Contribution, and any contributions made pursuant to this subsection are hereinafter referred to as the 'Total Capital Contributions.' "

and:

"Except as herein *expressly provided to the contrary*, the rights and obligations of the VENTURERS and the administration and termination of the VENTURE shall be governed by the Illinois Uniform Partnership Act." (Emphasis added.)

In its complaint, plaintiff alleged that it lost its capital contribution of $1,272,000 because of the unprofitability of the venture. Therefore, plaintiff alleged that since apportionment of losses was not specifically provided for in the agreement, the provisions of the Illinois Uniform Partnership Act specifically dealing with losses (Ill. Rev. Stat. 1985, ch. 106½, par. 18(a)) applied. Plaintiff prayed that judgment be entered against defendants for half of the losses, consistent with defendants' half ownership in the joint venture.

The trial court in its written letter of opinion stated:

"I find this reasoning [plaintiff's contention] to be somewhat convoluted and although this is only a 2—615 Motion to Dismiss, the Plaintiff must stand by the contract and documents that it attaches to its complaint. In this instance, those documents establish that the Defendant does not have any obligation to make a capital contribution to the joint venture and the Plaintiff's theory that the Defendant must reimburse one-half of whatever the Plaintiff puts into the venture totally negates the clear meaning of that clause. The intrusion of the Partnership Act of Illinois is of no help since here the partners clearly are entitled to rely upon the written contract that they entered into between themselves as controlling their relationship. I, therefore, grant the Defendant's Motion to Dismiss with prejudice."

We find that the trial court erred in its interpretation of the Act.

The Illinois reviewing courts have not, as yet, interpreted section 18(a), specifically insofar as it concerns the issue of whether partners have a duty to contribute to losses of capital. Therefore, in our analysis, we are guided by Illinois decisions which touch upon issues germane to those in the instant case and by decisions from other jurisdictions which have interpreted this specific provision of the Uniform Partnership Act.

In *Al Wiegand, Inc. v. Wiegand Concrete Products, Inc.* (1978), 65 Ill. App. 3d 1045, 383 N.E.2d 27, the appellate court upheld the

trial court's denial under section 18(d) of the Uniform Partnership Act (Ill. Rev. Stat. 1985, ch. 106½, par. 18(d)) of interest on capital contributions. (*Al Wiegand, Inc. v. Wiegand Concrete Products, Inc.* (1978), 65 Ill. App. 3d 1045, 1048, 383 N.E.2d 27.) As such, the appellate court implied that under the Act a partner is to be reimbursed for his capital contributions by the other partners. The court in *Koestner v. Wease & Koestner Jewelers, Inc.* (1978), 63 Ill. App. 3d 1047, 381 N.E.2d 11) dealt with a factual situation involving two parties who had decided to go into "some type of business relationship which would allow a 50/50 division of profits, losses and work." (63 Ill. App. 3d 1047, 1048, 381 N.E.2d 11.) Based on this framework, they formed a corporation where one of the two individuals originally purchased all the stock, and the other held a six-month option to purchase one-half of the stock. The jewelry business did not succeed and showed a net operating loss. The appellate court concluded that the totality of the relationship between the two men and the corporation indicated that the parties intended to operate their business on a 50/50 basis notwithstanding its corporate form. (63 Ill. App. 3d 1047, 1049, 381 N.E.2d 11.) Therefore, the court analyzed the two individual's responsibilities towards each other as if they were partners in the business. As such, the court concluded that the nonstockholder was liable to the stockholder for one-half of the business losses incurred during the life of the business. 63 Ill. App. 3d 1047, 1051, 381 N.E.2d 11.

As indicated above, there are several decisions from other jurisdictions that have interpreted section 18(a) of the Uniform Partnership Act with respect to how capital losses are to be handled among partners. In *Goldstein v. Burstein* (1960), 185 Cal. App. 2d 725, 8 Cal. Rptr. 574, the California Appellate Court held that in dissolution of a partnership which suffered losses, the partners were obligated to contribute toward the capital losses of the partners who had contributed capital in proportion to each partner's right to profit. (185 Cal. App. 2d 725, 727, 8 Cal. Rptr. 574, 576.) According to the court, this obligation was governed by section 18(a) of the Uniform Partnership Act and could be avoided only by specific contractual provisions. 185 Cal. App. 2d 725, 728, 8 Cal. Rptr. 574, 576.

Similarly, a North Carolina appellate court held in *Longley Supply Co. of New Bern, Inc. v. Styron* (1975), 26 N.C. App. 55, 214 S.E.2d 777, that the dissolution of a partnership did not of itself discharge the existing liability of any partner, and, absent an agreement to the contrary, each partner was required to contribute toward losses sustained by the partnership according to his share of profits. 26 N.C. App. 55, 56-57, 214 S.E.2d 777, 779.

Furthermore, some courts have decided that partners who contribute only their services are also required to contribute to the capital losses incurred by the other partners. In *Richert v. Handly* (1958), 53 Wash. 2d 121, 330 P.2d 1079, the Supreme Court of Washington held that where the parties had not agreed upon or specified the basis upon which losses were to be shared, the provisions of the Uniform Partnership Act were controlling. (53 Wash. 2d 121, 123, 330 P.2d 1079, 1081.) Therefore, each partner, including the one who only contributed his services, was required to contribute toward the loss sustained by the partnership according to his share in the profits. (53 Wash. 2d 121, 123, 330 P.2d 1079, 1081; accord *Gore v. Vines* (1913) 72 W. Va. 783, 79 S.E. 820.) On the other hand, the Supreme Court of California in *Kovacik v. Reed* (1957), 49 Cal. 2d 166, 315 P.2d 314, held that where the partners had agreed that one was to supply the money and the other labor to carry on the venture, the partner who had contributed the money capital was not entitled to recover from the other partner. (49 Cal. 2d 166, 170, 315 P.2d 314, 316.) The basis for the decision was as follows:

"The rationale of this rule *** is that where one party contributes money and the other contributes services, then in the event of a loss each would lose his own capital—the one his money and the other his labor. Another view would be that in such a situation the parties have, by their agreement to share equally in profits, agreed that the values of their contributions—the money on one hand and the labor on the other—were likewise equal; it would follow that upon the loss *** of both money and labor, the parties have shared equally in the losses." (49 Cal. 2d 166, 170, 315 P.2d 314, 316.)

The court stated, though, that this rule does not apply in a case where the party who had performed the services was to receive compensation for services rendered to the common undertaking which had been paid before computation of the profits or losses. 49 Cal. 2d 166, 170, 315 P.2d 314, 316; accord *De Witte v. Calhoun* (1963), 221 Cal. App. 2d 473, 34 Cal. Rptr. 491; see *Larsen v. Claridge* (1975), 23 Ariz. App. 508, 534 P.2d 439.

■ In applying the rationale used by the other jurisdictions interpreting section 18(a) of the Uniform Partnership Act to the instant case, we conclude that under that section (Ill. Rev. Stat. 1985, ch. 106½, par. 18(a)), defendants must reimburse plaintiff for capital losses it incurred, commensurate with defendants' half share of the joint venture. Furthermore, article VI of the agreement, entitled "Payment to Developer for Time Devoted to Project," provided:

"Section 6.01 *Initial Compensation*

Commencing for the date hereof and continuing until the first to occur of the following events:

(a) The elapse of 18 months from the date of this Agreement;

(b) The termination of this Agreement pursuant to the terms hereof;

(c) The failure of the DEVELOPER to fulfill its functions as prescribed herein resulting from the death, prolonged illness, bankruptcy or other unavailability without regard to the cause of its principles, JEFFREY HYMAN and/or GARY ROSEN, and the inability of the remaining principal to fulfill the DEVELOPER functions or to find a replacement within 45 days for the deceased, ill, bankrupt or unavailable principal;

(d) The completion of the development of VENTURE LAND and the sale by the VENTURE of all its products; or

(e) The sale of all assets of the VENTURE; the VENTURER shall pay to DEVELOPER from its construction and/or development budget as an expense of the VENTURE, the sum of $6,000 per month on the first day of each month."

Thus, given the fact that defendants were to be compensated for their services, the rule enunciated by the supreme court of California in *Kovacik v. Reed* (1957), 49 Cal. 2d 166, 315 P.2d 314, does not control the instant case since the exception for compensation which did not apply in that case applies in the instant case.

In conclusion, we remand the cause for an accounting, and find that the trial court erred in dismissing plaintiff's count I of the complaint for failure to state a cause of action. Therefore, we hold that the parties may proceed to trial on count I subject to a full accounting and settlement of the partnership business.

The trial court dismissed counts II, III and IV of plaintiff's first amended complaint on the basis of its decision regarding the dismissal of count I. Given our decision today as to count I, we direct the trial court to reexamine the sufficiency of counts II, III and IV of the complaint, and we do not render an opinion as to that matter at this time.

Next, we examine the trial court's decision to dismiss counts V and VI of the first amended complaint. Plaintiff brought both of these counts under the CFDBPA (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*).

The relevant allegations of count V are reproduced below:

"7. There was in force at all times mentioned herein, [at the time the Agreement was entered into by the parties] Ill. Rev.

Stat., ch. 121-½, par. 262, which provides in relevant part:

*Unfair methods of competition and unfair or deceptive acts or practices,* including but not limited to the use or employment of any deception, fraud, false pretense, false promise misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practice Act', approved August 5, 1956, in the conduct of any trade or commerce *are hereby declared unlawful* whether any person has in fact been mislead deceived or damaged thereby.

8. On or about October 29, 1982, as an inducement to and prior to entering into the aforementioned AGREEMENT, both TRIANA, HYMAN and ROSEN, individually and as agents of TRIANA, represented to CUE they possessed the knowledge and ability to manage, control, operate and direct the Joint Venture Project;

9. The said representation made by TRIANA, its officers and agents HYMAN and ROSEN, individually and as agents, was false when made;

10. Said representation was made by TRIANA, HYMAN and ROSEN jointly and severally with the knowledge it was false or in reckless disregard of the truth or falsity of said representation;

11. Said representation by TRIANA, HYMAN and ROSEN was made with the intent CUE should rely upon it and enter into the aforementioned AGREEMENT;

12. CUE entered into the AGREEMENT *** in reliance upon the representation of TRIANA, its officers and agents, HYMAN and ROSEN, individually and as agents;

13. CUE would not have entered into said AGREEMENT if it had possessed knowledge of the false nature of said representation;

14. As a direct and proximate result of the wrongful conduct on the part of TRIANA, its officers and agents HYMAN and ROSEN, individually and as agents, CUE has been damaged and continues to be damaged;

15. As a direct and proximate result of the conduct on the part of TRIANA, its officers and agents, HYMAN and ROSEN, individually and as agents, a direct and indirect injury to

the public has occurred in that the homes built pursuant to the AGREEMENT, as well as the Development Project itself, were of substandard quality;

16. As a direct and proximate result of the conduct on the part of TRIANA, its officers and agents, HYMAN and RO-SEN, individually and as agents, a direct and indirect injury to the public has occurred in that loss and damage has been caused to CUE, which is a wholly owned subsidiary of Lyons Savings and Loan Association mutually owned by its depositors ***." (Emphasis added.)

Count VI is virtually identical to count V except for the following allegation:

"8. On or about October 29, 1982, as an inducement to and prior to entering into the aforementioned AGREEMENT, both TRIANA, HYMAN and ROSEN, individually and as agents of TRIANA, represented to CUE they would use their best efforts in the management, operation and control of said Joint Venture Project ***."

The trial court dismissed these two counts on the following grounds: (1) that plaintiff did not establish a factual basis for an allegation of a public injury; (2) that the Consumer Fraud Act was never intended to protect a financier and a developer who had entered into a joint venture with each other since (neither) could be called a consumer of the other; and (3) that the operative allegations (contained in paragraphs 8 of each count) are insufficient to state a cause of action under the CFDBPA.

Section 2 of the CFDBPA provides:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." Ill. Rev. Stat. 1985, ch. 121½, par. 262.

The first step in our analysis is to ascertain whether this statute applies to the instant case. We agree with plaintiff that this legislation was enacted "to protect consumers and borrowers and businessmen

against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Ill. Rev. Stat. 1985, ch. 121½, Preamble to the Consumer Fraud and Deceptive Business Practices Act.

■■ ■ Under section 11a, the CFDBPA "shall be liberally construed" (Ill. Rev. Stat. 1985, ch. 121½, par. 271a). (See *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 447 N.E.2d 1007.) Under such a construction, we accept plaintiff's contention that one does not need to allege a public injury to recover under the CFDBPA. (*Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433.) However, we do not agree with plaintiff that in the absence of a public injury requirement that it necessarily follows that disputes such as that of the instant case were contemplated within the scope of CFDBPA. Our analysis of relevant case law construing this statute indicates that the CFDBPA has been interpreted as giving consumers broader protection, as illustrated by the following language from *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267:

> "There is a clear mandate from the Illinois legislature that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties. [Citations.]
>
> Since the Act affords even broader *consumer* protection than does the common law action of fraud, it is clear that a plaintiff suing under the Act need not establish all of the elements of fraud as the Act prohibits any deception or false promise. [Citation.] And it is clear from the language of the Act, particularly its reference to false promises, that liability is not limited to existing material facts. Furthermore, it is well established that under the Act the intention of the seller (his good or bad faith) is not important and a plaintiff can recover under the Act for innocent misrepresentations. [Citations.]" (Emphasis added.) (102 Ill. App. 3d 483, 495, 429 N.E.2d 1267.)

The CFDBPA does not seem to have been intended to extend to every transaction between contracting practices (*Christensen v. Numeric Micro, Inc.* (1987), 151 Ill. App. 3d 823, 829, 503 N.E.2d 558), or to be completely open-ended. (*Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 215, 438 N.E.2d 1247.) The court in *Exchange National Bank* held that the CFDBPA "does not apply to every situation where *** the only actual controversy is whether an isolated breach of contract occurred." 108 Ill. App. 3d 212, 215, 438 N.E.2d 1247; see *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 447 N.E.2d 1007.

 We agree with the Federal district court's interpretation in *Newman-Green, Inc. v. Alfonzo-Larrain* (N.D. Ill. 1984), 590 F. Supp. 1083, which held that "there is considerable evidence that the Act's 1973 amendment [creating a private cause of action under the CFDBPA] did not effect a replacement of Illinois' common law of contracts and fraud." (590 F. Supp. 1083, 1086.) "The legislature could not have intended it to apply to [a] case between businessmen ***." (590 F. Supp. 1083, 1086.) The court in *Newman-Green* concluded that, based on its interpretation of Illinois case law, absent a "public injury" the application of the CFDBPA is restricted to conduct that "affect[s] consumers generally." (590 F. Supp. 1083, 1086.) This interpretation is supported by the appellate court's reasoning in *Tague v. Molitor Motor Co.* (1985), 139 Ill. App. 3d 313, 487 N.E.2d 436, which upheld the applicability of the CFDBPA to redress a private wrong resulting from a transaction between a customer and an automobile dealership. 139 Ill. App. 3d 313, 316, 487 N.E.2d 436; accord *Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 457 N.E.2d 1335 (upholding applicability of the CFDBPA to disputes between residential lessee and landlord).

 Therefore, we conclude that the trial court correctly dismissed counts V and VI on the basis that the disputes herein between businessmen, who are not consumers of each other's goods or services, did not fall within the ambit of the CFDBPA. See *Horsell Graphic Industries, Ltd. v. Valuation Counselors, Inc.* (N.D. Ill. 1986), 639 F. Supp. 1117.

 ██ Next, plaintiff argues that the trial court erred in dismissing count VII of plaintiff's first amended complaint for failure to allege a cause of action for fraud in the inducement.

The relevant allegations of count VII are:

"7. On or about October 29, 1982, as an inducement to and prior to entering into the aforementioned AGREEMENT, TRIANA, by its officers and agents HYMAN and ROSEN, individually and as agents for TRIANA, jointly and severally made the representation to CUE that Defendants had the knowledge and ability necessary to manage, control, operate and direct the Joint Venture Project;

8. Said representation was false in that TRIANA, HYMAN and ROSEN did not possess the knowledge and ability necessary to manager [*sic*], control, operate and direct the Joint Venture Project;

9. At the time TRIANA, HYMAN and ROSEN made the aforementioned representation, they knew said representation

to be false or in the alternative, made said representation in reckless disregard of the truth or falsity of said representation;

10. Said representation was made with the intent of inducing CUE to enter into the aforementioned contract;

11. CUE relied upon this representation and entered into the Joint Venture Agreement;

12. CUE would not have entered into said AGREEMENT if it had possessed knowledge of the false nature of said representation;

13. CUE's reliance upon said representation of TRIANA, HYMAN and ROSEN was reasonable in that HYMAN and RO-SEN held themselves out as previously experienced and experts in the development of a project as set forth in the AGREE-MENT:

14. As a direct and proximate result of the wrongful conduct on the part of TRIANA, its officers and agents HYMAN and ROSEN, individually and as agents, CUE has been damaged and continues to be damaged."

The trial court dismissed this count on the basis that "the language found in paragraph 8 is merely conclusory in nature and is insufficient." The trial court allowed plaintiff to replead this count to cure the defects it found. In its proposed second amended complaint, plaintiff repleaded the fraud in the inducement count as count V of that complaint. In dismissing it, the trial court found that this count had the "same problems" as its predecessor in that it contained "some thirty-three allegations which are conclusory in nature." According to the court, plaintiff failed "to set forth what was said, by whom, to whom and where and when." Specifically, plaintiff changed the general allegations contained in paragraph 8 of the first amended complaint into 33 subparagraphs, each containing a different allegation. We agree with the trial court's observation, that count V of the second amended complaint is fundamentally not different from count VII of the first amended complaint, and, therefore, we will examine the sufficiency of that count only.

The Illinois Supreme Court in *Teter v. Clemens* (1986), 112 Ill. 2d 252, 492 N.E.2d 1340, stated:

"Fact pleading, as opposed to notice pleading, is required in Illinois; accordingly, a plaintiff must allege facts that are sufficient to bring his claim within the scope of a legally recognized cause of action. [Citations.] Only well-pleaded facts are admitted by a motion to dismiss, and the requirement that a complaint set forth facts necessary for recovery under the theory

asserted is not satisfied, in the absence of the necessary allegations, by the general policy favoring the liberal construction of pleadings [citations]." (112 Ill. 2d 252, 256-57, 492 N.E.2d 1340.)

In applying these principles to count VII of the first amended complaint, we find that the trial court erred in dismissing this count, since plaintiff did plead facts which would be sufficient to establish a cause of action for fraud in the inducement.

To constitute fraud sufficient to invalidate a contract, a representation must be made of a material fact made for the purpose of inducing the other party to act, must be known to be false by the maker, but reasonably believed to be true by the other party and must be relied upon to the other party's detriment. (*Grane v. Grane* (1986), 143 Ill. App. 3d 979, 983, 493 N.E.2d 1112.) Fraud in the inducement vitiates the contract and renders the agreement voidable at the option of the injured party. *Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 439, 437 N.E.2d 817.

Defendants are correct in asserting that "any recovery based on theories of fraudulent misrepresentation or deceit must be pleaded with certainty and specificity." (*Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 215, 438 N.E.2d 1247.) We disagree, though, with defendants' contention that plaintiff's allegations regarding defendants' statements are merely "puffing" and, therefore, do not constitute misrepresentations of fact.

We conclude that here plaintiff meets the criteria for sufficiency in pleading fraud set out in *Swaw v. Ortell* (1984), 137 Ill. App. 3d 60, 484 N.E.2d 780:

"A complaint in fraud must allege (1) that a false statement of material fact was made as opposed to an opinion; (2) that the party making the representation knew or believed the representation to be untrue; (3) that the party to whom the representation was made had a right to rely on it and in fact did so; (4) that the representation was made for the purpose of inducing the other party to act, or refrain from acting upon it; and (5) reliance by the person to whom the statement was made led to his injury. [Citation.]" (137 Ill. App. 3d 60, 73, 484 N.E.2d 780.)

Plaintiff alleged that in making the contract with Triana, Hyman and Rosen, it relied upon defendants' representations regarding their knowledge in managing the venture, which knowledge they had derived from their previous experience and expertise in managing a similar project. Defendants argue that plaintiff's complaint contained no

specific allegations of fact concerning which defendant made what specific statements, how those statements were conveyed, and to whom they were conveyed. (See *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 438 N.E.2d 1247.) Defendants contend that CUE, "as a legal person, cannot be the actual recipient of any communications, and it is meaningless to assert that defendants Hyman and Rosen made the alleged representations 'jointly and severally.' " We find these arguments to be without merit. Plaintiff's complaint may be inartfully drawn, but we find that it meets the essential test for sufficiency in that it reasonably informs defendants of the nature of the claim. (See *Swaw v. Ortell* (1984), 137 Ill. App. 3d 60, 484 N.E.2d 780.) CUE as a corporation is the plaintiff in this case, and it brings the action in its own name (see *Federal Insurance Co. v. Ainsworth* (1961), 31 Ill. App. 2d 19, 175 N.E.2d 804), and, therefore, it may allege that defendants made the representations to the corporation. It may be poor exposition to say defendants "jointly and severally" made the representations, but this statement is understandable in that it conveys the information that both defendants were involved.

■■■ Defendants also contend that their representations regarding their alleged ability to manage the venture constituted merely their opinion rather than statements. (See *Carey Electric Contracting, Inc. v. First National Bank* (1979), 74 Ill. App. 3d 233, 392 N.E.2d 759.) Defendants' argument is misdirected in that they fail to make the connection between this allegation and the underlying factual basis for the allegation, *i.e.*, that defendants' management ability is derived from their alleged previous experience in managing a similar venture. Therefore, we conclude that even assuming, *arguendo*, that defendants' representations are opinions, they have asserted these statements "as *** affirmative fact[s] material to the transaction, so that the other party may reasonably treat [them] as *** fact[s] and rely upon [them] as such, [and therefore] the statement[s] clearly [became] an affirmation of the fact within the meaning of the rule against fraudulent misrepresentation." *Buttitta v. Lawrence* (1931), 346 Ill. 164, 173, 178 N.E. 390; see *Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 489 N.E.2d 311.

We, therefore, find that the trial court erred in dismissing plaintiff's count VII for fraud and remand for trial on this count.

■■■ Next, plaintiff contends that the trial court erred in dismissing count VIII of the first amended complaint for fraud. We disagree.

Count VIII parallels count VII except for the following allegations:

"7. On or about October 29, 1982, as an inducement to and prior to entering into the aforementioned AGREEMENT, TRIANA, by its officers and agents HYMAN and ROSEN, individually and as agents for TRIANA, jointly and severally made the representation to CUE that Developer would use its best efforts in the management, operation and control of said Joint Venture Project;

8. Said representation was false in that TRIANA, HYMAN and ROSEN did not intend to use its best efforts in the management, operation and control of the Joint Venture Project;

* * *

11. Said representation was made by TRIANA, HYMAN and ROSEN in furtherance of a scheme by Defendants to defraud CUE ***."

The trial court made the following findings as to this count:

"Count VIII deals with Defendant's alleged representation as to how they would conduct themselves in the future were they to become parties to the contract. It is alleged that at the time those representations were made that they were never intended to be fulfilled; therefore, an alleged state of fraud [sic], based upon future conduct. This, in my opinion, is nothing more than puffery and not a basis to afford legal recovery upon. I, therefore, grant the Defendant's Motion to Dismiss with prejudice."

We conclude that the trial court did not err in this finding.

The appellate court held in *Younger v. Revelle* (1979), 78 Ill. App. 3d 1, 397 N.E.2d 221, that a prophecy of future developments or an expression of opinion relating to expectations or contingent events does not constitute an actionable misrepresentation where such prophecy or expression was merely an example of "puffing" or "boosting" and not intended as a statement of present fact. (78 Ill. App. 3d 1, 4, 397 N.E.2d 221.) Plaintiff contends that the representations made by defendants, as alleged in paragraph 7 of count VIII, were an affirmation of present fact and not a prophecy of future developments or puffery. We find that this argument is meritless. In our opinion paragraph 7 contains almost a classic example of puffery in that plaintiff alleges that defendants promised "to use [their] best efforts in the management *** of the joint venture."

Plaintiff urges us that, even if we conclude that paragraph 7 does not contain allegations of present fact, we should still find that fraud was sufficiently alleged based on an exception to the rule stated above. The Illinois Supreme Court in *Steinberg v. Chicago Medical*

*School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634, enunciated the exception thusly:

"[T]he general rule denies recovery for fraud based on a false representation of intention or future conduct, but there is a recognized exception where the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." (69 Ill. 2d 320, 334, 371 N.E.2d 634.)

In this case, plaintiff in paragraph 11 asserted that defendants' representation was made "in furtherance of a scheme *** by defendants to defraud CUE." This allegation is conclusory, and, as such, we must ignore it as it is not supported by allegations of specific facts upon which this conclusion rests. *Landau v. Schneider* (1987), 154 Ill. App. 3d 875, 878, 506 N.E.2d 735, 737.

We, therefore, conclude that the trial court correctly dismissed with prejudice count VIII of plaintiff's first amended complaint for failure to state a cause of action.

Next, plaintiff contends that the trial court erred in dismissing with prejudice count IX of the first amended complaint for negligent misrepresentation on the ground that it failed to state a cause of action. We disagree.

The relevant allegations of count IX are as follows:

"7. On or about October 29, 1982, as an inducement to and prior to entering into the aforementioned AGREEMENT, TRIANA, by its officers and agents HYMAN and ROSEN, individually and as agents for TRIANA, made the representation to CUE that Developer had the knowledge and ability necessary to manage, control, operate and direct the Joint Venture Project.

8. Said representation was false in that TRIANA, HYMAN and ROSEN did not possess the knowledge and ability necessary to manage, control, operate and direct the Joint Venture Project;

9. TRIANA, HYMAN and ROSEN knew, or in the exercise of reasonable care should have known, that said representation was false;

10. Said representation was made with the intent of inducing CUE to enter into the aforementioned AGREEMENT;

11. CUE relied on the representation and entered into the AGREEMENT;

12. CUE's [*sic*] would not have entered into the AGREEMENT if it had possessed knowledge of the false nature of said representation;

13. CUE acted with reasonable care in relying upon said representation of TRIANA, HYMAN and ROSEN since HYMAN and ROSEN held themselves out as previously experienced and experts on the development of a project as set forth in the AGREEMENT ***."

The trial court dismissed this count on the basis that the tort of negligent misrepresentation is not applicable in this case since defendants are not "in the business or profession of supplying information for the guidance of others in their business transactions." We agree with this conclusion.

Recently in *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 503 N.E.2d 246, the Illinois Supreme Court reaffirmed the position it had taken in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, that recovery in tort for economic losses, in other words, for negligent misrepresentation, is available "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." 91 Ill. 2d 69, 88-89, 435 N.E.2d 443.

Plaintiff argues that *Moorman* is inapplicable since that case involved a product liability claim, and, therefore, the court's ruling should be restricted strictly to those types of actions. We find this argument to be untenable. Subsequent to the *Moorman* decision several cases applied its holding to factual contexts other than product liability. (See *Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.* (1982), 109 Ill. App. 3d 132, 440 N.E.2d 282 (recovery for negligent misrepresentation not available to buyer of computer and software package on the ground that seller was not in the business of supplying information); *Knox College v. Celotex Corp.* (1983), 117 Ill. App. 3d 304, 308, 453 N.E.2d 8 (plaintiff college did not state a cause of action for negligent misrepresentation against materialman, because defendant was not in the business of supplying information).

The cases cited by plaintiff are actually more supportive of defendants' position. In *Rotello v. Scott* (1981), 95 Ill. App. 3d 248, 419 N.E.2d 1233, the appellate court allowed recovery for negligent misrepresentation to plaintiffs on the basis that defendants, as sellers of property, made fraudulent representations in the sale of certain commercial real estate. One may infer that the sellers were also in the business of providing information specifically about the condition of the real estate. (Accord *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) In the instant case, defendants are

not engaged in the business of supplying information or guidance, but solely in the business of managing the venture.

We therefore conclude that the trial court properly dismissed count IX of the first amended complaint. Parenthetically, we note that this count is similar to count VII, which we found to be sufficient as stating a cause of action for fraud in the inducement.

Next, plaintiff contends that the trial court abused its discretion by denying CUE's motion for leave to file its second amended complaint. We disagree.

Whether to allow an amendment to a pleading rests in the sound discretion of the trial judge (*Hoffman v. Nustra* (1986), 143 Ill. App. 3d 259, 271-72, 492 N.E.2d 981), and will not be disturbed absent a showing of an abuse of that discretion. (*Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 303, 484 N.E.2d 841.) The standard to be applied is whether the trial court's denial of the request to amend furthers the ends of justice. *UIDC Management, Inc. v. Sears Roebuck & Co.* (1986), 141 Ill. App. 3d 227, 233, 490 N.E.2d 164.

We find that in this case the trial court's denial of CUE's motion to replead did further the ends of justice. The proposed second amended complaint contained 15 counts, only four of which constituted new matter. The trial court properly dismissed these new counts, which in essence alleged that the money that CUE invested into the joint venture was in reality a loan to the venture. Even assuming, *arguendo*, that plaintiff states a valid cause of action for breach of contract under these counts, the trial court was justified in denying the motion on the basis that such amendments should not be permitted if they concern matters which the pleader knew at the time the original pleading was filed, and the pleader offers no good reason for not having included such matters in the original pleading. (*Hoffman v. Nustra* (1986), 143 Ill. App. 3d 259, 266, 492 N.E.2d 981.) It appears to us that it would be safe to assume, that at the time of the original pleading, CUE would be aware of making loans to the venture, and that the loans were outstanding. Furthermore, plaintiff offered no adequate explanation regarding its failure to allege any of this matter in its original complaints.

The other counts are merely a reassertion of the counts of the first amended complaint which were already dismissed with prejudice by the court. Therefore, plaintiff did not, through its second amended complaint, cure any defects of the prior pleading. (See *Talas v. Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 479 N.E.2d 1052.) We, therefore, find that the trial court did not abuse its

discretion when it denied plaintiff's motion for leave to file the second amended complaint.

In conclusion, we affirm in part, reverse in part and remand with directions the decision of the circuit court of Du Page County.

Affirmed in part, reversed in part and remanded with directions.

INGLIS and DUNN, JJ., concur.